## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
## The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 10-25453-MER |
| MARK STANLEY MILLER ) | |
| JAMILEH MILLER ) | Chapter 13 |
| ) | |
| Debtors. ) | |
| ) | |
| ——————————————— | |
| ) | |
| DEUTSCHE BANK NATIONAL TRUST ) | |
| COMPANY ) | |
| ) | |
| Movant ) | |
| ) | |
| v. ) | |
| ) | |
| MARK STANLEY MILLER and ) | Signed/Docketed |
| JAMILEH MILLER, ) | December 4, 2012 |
| ) | |
| Respondents. ) | |

### ORDER

THIS MATTER comes before the Court on the *Motion for Relief from Automatic Stay* ("Motion for Relief from Stay") (Docket No. 64) filed by Deutsche Bank National Trust Company, as Trustee of the Indymac INDX Mortgage Loan Trust 2006-AR-13, Mortgage Pass-Through Certificates, Series 2006-AR13 Under the Pooling and Servicing Agreement Dated May 1, 2006 ("Deutsche"), and the *Debtors' Objections and Response to Relief from Automatic Stay & Motion to Disqualify Attorney Susan Hendricks & the Lawfirm of Aronowitz & Mecklenburg, LLP* ("Objection") (Docket No. 79) filed by Debtors Mark Stanley Miller and Jamileh Miller (collectively, the "Debtors"). The Court has considered the pleadings and the arguments presented by the parties at the evidentiary hearing, and hereby finds and concludes as follows.[1]

### JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 (a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C.

---

[1]  During the course of the hearing, the Court admitted Deutsche's Exhibits 1 and 2, and Debtors' Exhibits E, F and J. The Court also took judicial notice of the Debtors' Schedules A and D (Docket No. 2).

§ 157(b)(2)(G), as it involves a motion to terminate, annul, or modify the automatic stay.

## BACKGROUND

The Debtors own certain real property known by street address as 19733 E. Union Drive, Centennial, CO 80015 (the "Property").[2]  On April 20, 2006, the Debtors executed and initialed a five-page promissory note with a two-page addendum to adjustable rate note (collectively, the "Note") in the original principal amount of $216,236 in favor of IndyMac Bank, F.S.B. ("IndyMac").[3]

The Note was secured by a Deed of Trust assigning a security interest in the Property to the public trustee of Arapahoe County and creating a power of sale in the public trustee.[4]  The Debtors executed or initialed each page of the Deed of Trust, which consists of twenty-three pages including attachments.[5] The Debtors' signatures on the signature page of the Deed of Trust are notarized.[6]  The Deed of Trust identifies Mortgage Electronic Registration Systems, Inc. ("MERS"), acting as a nominee for IndyMac and IndyMac's successors and assigns, as its beneficiary.[7]  The Deed of Trust expressly identifies the Note "signed by Borrower and dated April 20, 2006."[8]  The Deed of Trust further provides "[t]he Note . . . (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."[9]

The Deed of Trust was recorded on April 25, 2006, at reception number 2006048620 with the Jefferson County Clerk and Recorder.[10]  The Deed of Trust

---

[2]  Debtors' Amended Schedule A, Docket No. 20.

[3]  *See* Exhibit 1.

[4]  *See* Exhibit 2.

[5]  *Id.*  The attachments to the thirteen-page Deed of Trust include the following documents: 1) a one-page legal description captioned "Exhibit A"; 2) a three-page Planned Unit Development Rider; 3) a four-page Fixed/Adjustable Rate Rider Interest Only Fixed Period; and 4) a two-page Addendum to Fixed/Adjustable Rate Rider.

[6]  *Id.* at p. 13.

[7]  *Id.* at p. 2, ¶ (E).

[8]  *Id.* at p. 2, ¶ (F).

[9]  *Id.* at p. 11, ¶ 20.

[10]  *Id.*

was re-recorded on January 19, 2007, at reception number B7034459 with the Arapahoe County Clerk and Recorder.[11]

## A.  State Court Proceedings[12]

The Debtors failed to make the required payments on the Note.[13]  In February 2010, Deutsche, claiming to be the current holder of the Note, filed a foreclosure action in the District Court for Arapahoe County, Colorado, (the "State Court") and sought an Order Authorizing Sale ("OAS") under Colorado Rule of Civil Procedure 120.[14]

On May 4, 2010, the Debtors filed their "Motion for Hearing on Jurisdiction" in the Rule 120 proceeding.[15]  The Debtors argued Deutsche lacked standing to seek an OAS because "standing to bring [a Rule 120] proceeding stems from an interest recorded in the public record which the Petitioner here does not have and has made no effort to present such evidence to the court".[16]

On May 6, 2010, the State Court entered an order denying the Debtors' motion.[17]  In this order, the State Court determined Deutsche had made a sufficient showing it was an "interested person" entitled to an OAS.[18]  The text of the order reads as follows:

---

[11]  *Id.*  The certified copy of the Deed of Trust tendered to the Court contains recording information for both counties.

[12]  The factual background regarding the state court proceedings is set forth in detail in the February 1, 2012, *Order Recalling Mandate and Remanding Case to the Bankruptcy Court* issued by the Tenth Circuit Court of Appeals (the "10th Cir. Order"), which includes citations to briefs filed by the parties.  *See* Docket No. 158.  Those facts are hereby incorporated by reference, and have been reproduced in this opinion in order to present a complete record.

[13]  10th Cir. Order at p. 3.

[14]  *Id.*  The Tenth Circuit noted "Deutsche Bank applied for the OAS in the name of 'Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage Loan Trust 2006-AR13, Mortgage Pass-Through Certificates, Series 2006-AR13 Under the Pooling and Servicing Agreement dated May 1, 2006.'"  *Id.* at n.1.

[15]  *Id.*

[16]  *Id.* at p.4 (quoting Deutsche's supplemental appellate brief).

[17]  *Id.*

[18]  *Id.*

The issue before the Court is whether the party seeking the ord[e]r auth[or]izing sale is an "interested person" as that term is used in C.R.C.P. 120. A copy of the note is attached to the motion requesting an order auth[oriz]ing sale. The note on page 6 below the respo[n]d[e]nts' signatures is endorsed in blank by Lender. No evidence has been presented to suggest that the endorsement is not genuine or that the pet[i]tioner is not in possession of the original note. The pet[i]tioner is entitled to an order auth[oriz]ing sale.[19]

The State Court thus reached its conclusions based on its review of a copy of the Note, which had been indorsed in blank.[20] There was no evidence that the state court was presented with the original Note before it authorized the sale.[21] A few days later, the Debtors again moved for a hearing on the jurisdictional issue and the state court summarily denied their motion.[22] The State Court subsequently entered an OAS and an additional summary order finding Deutsche had established jurisdiction in its pleadings and the Debtors had "not specified a legal reason why jurisdiction has not been established."[23]

## B.     The Debtors' Bankruptcy Case

### 1.     Procedural History Prior to Appeal of Order Granting Relief from Stay

On June 22, 2010 ("Petition Date"), the Debtors filed for relief under Chapter 13 of the Bankruptcy Code.[24] On August 23, 2010, the Debtors filed an

---

[19]   *Id.* (quoting Deutsche's supplemental appellate brief).

[20]   *Id.*

[21]   *Id.*

[22]   *Id.*

[23]   *Id.*

[24]   During the course of their bankruptcy case, the Debtors proposed six Chapter 13 plans. Each proposed plan has drawn objections and none has been confirmed. The confirmation issues have been stayed pending final resolution of the instant Motion for Relief from Stay. The six Chapter 13 plans include the following:

1) Original Plan (Docket No. 9). Objections were filed by the Trustee and Deutsche, and the Plan was denied on September 13, 2010.

2) Amended Plan (Docket No. 21). The Amended Plan was denied on September 13, 2010.

*Objection to and Motion to Disallow Proof of Claim No. 12315030*, the claim filed by One West Bank ("OWB").[25]  Deutsche filed its *Response to Objection and Motion to Disallow Proof of Claims No 12315030* on September 9, 2010.[26]  On October 21, 2010, the Debtors filed a *Notice of Withdrawal of Objection to Proof of Claim Without Prejudice With Leave to Proceed in Adversary Proceeding*.[27]

On September 13, 2010, the Debtors filed a *Motion for Valuation of Security* regarding the Property,[28] to which Deutsche filed a response.[29]  To date, the Debtors have not prosecuted the motion nor requested a hearing, and no hearing is set.

On October 7, 2010, Deutsche filed its Motion for Relief from Stay,[30] claiming to be the current owner of the Note and Deed of Trust and entitled to obtain relief from stay to proceed with the foreclosure of the Property. Deutsche alleged the Debtors were in default under the terms of the Note, and the Debtors had not made a monthly mortgage payment since the Petition Date. Deutsche asserted it was entitled to relief from the automatic stay for "cause" because there was a lack of adequate protection of Deutsche's interest in the

---

3) Second Amended Plan (Docket No. 43).  Objections were filed by the Trustee and Deutsche. The Second Amended Plan was denied on November 8, 2010.

4) Third Amended Plan (Docket No. 100).  An Objection was filed by the Trustee, and a continued confirmation hearing was held on January 10, 2011, and continued to January 24, 2011.  The matter was then continued twice at the Debtors' request, first to March 14, 2011 and then to May 9, 2011.  The Third Amended Plan was denied at the hearing on May 9, 2011.

5) Fourth Amended Plan (Docket No. 137).  An Objection was filed by the Trustee.  The Fourth Amended Plan was denied on July 18, 2011.

6) Fifth Amended Plan (Docket No. 145).  An Objection was filed by the Trustee.  Plan confirmation has been held in abeyance.

[25]  Docket No. 30.

[26]  Docket No. 37.

[27]  Docket No. 72.

[28]  Docket No. 45.

[29]  Docket No. 56.

[30]  *See* Docket No. 64.

Property pursuant to 11 U.S.C. § 362(d)(1).[31]  Additionally, Deutsche asserted it was entitled to relief from the automatic stay pursuant to § 362(d)(2) because there was no equity in the Property and the Property was not necessary for an effective reorganization.  Deutsche sought termination of the stay pursuant to § 362(d)(1) and (2), reasonable attorneys' fees and costs in the amount of $800.00, and relief to pursue state remedies under the Note and Deed of Trust.

The Debtors responded to the Motion for Relief from Stay in two ways.  First, on October 18, 2010, the Debtors commenced an adversary proceeding against Deutsche, OWB, Aronowitz & Mecklenburg, LLP ("A&M"), and CitiMortgage, Inc. ("CitiMortgage").[32]  Motions to dismiss the Complaint were filed by CitiMortgage, and by A&M, Deutsche and OWB, and the Debtors responded.  After granting two continuances requested by the Debtors, on May 3, 2011, the Court conducted a hearing on the two motions to dismiss and ordered as follows: (a) the motion to dismiss filed by A&M, Deutsche, and OWB was to be held in abeyance pending a ruling from the Bankruptcy Appellate Panel for the Tenth Circuit ("BAP") in Case no. 10-073; (b) the motion to dismiss filed by CitiMortgage was denied; and (c) the Debtors were granted leave to amend the Complaint only with respect to claims against CitiMortgage.[33]  The Debtors filed their first amended complaint on May 16, 2011.  On June 1, 2011, Citimortgage filed its Motion to Dismiss Plaintiffs' First Amended Adversary Complaint.  The Debtors failed to respond, and the Court entered an order dismissing CitiMortgage as a defendant in the adversary proceeding.[34]  The adversary proceeding is currently in abeyance pending a final order on the Motion for Relief from Stay.

Second, on October 26, 2010, the Debtors filed their Objection, asserting Deutsche was not the proper party in interest and lacked standing to bring the Motion for Relief from Stay.[35]  The Debtors contend they have substantial interest and equity in the Property, and the Property is necessary for an effective reorganization.  Despite the values the Debtors listed on their Schedules under the penalty of perjury, the Debtors, without any substantiation, "assert an estimated equity of at least [$]100k considering the three (3) years of payments made, capital improvements, and other factors which forms [sic]

---

[31] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

[32] Complaint, Adv. Proc. No. 10-01757-MER, Docket No. 1.

[33] Minutes of Proceeding, Adv. Proc. No. 10-01757-MER, Docket No. 34.

[34] *See* Order, Adv. Proc. No. 10-01757-MER, Docket No. 39.

[35] *See* Docket No. 79.

the basis for real equity."[36]  The Debtors also allege the Property is utilized to conduct their small business and is thus necessary for an effective reorganization.

On November 3, 2010, the Court held a preliminary hearing on the Motion for Relief from Stay and the Debtors' Objection thereto.  During the hearing, counsel for Deutsche proffered a copy of the Note indorsed in blank by IndyMac, along with a copy of the Deed of Trust.  The Court accepted counsel's representations the original Note had been requested, was in transit to counsel's office, and could be presented at any evidentiary hearing.  On a summary basis, based on representations at the preliminary hearing, the Court found sufficient grounds existed to grant relief from stay under § 362(d)(1) for "cause."  On November 3, 2010, the Court entered its Order Granting Relief from Stay permitting Deutsche to continue its foreclosure proceedings with respect to the Property (the "Stay Order").[37]

> ### 2.    *Debtors' Appeal of Order Granting Relief from Stay.*

The Debtors appealed to the BAP, which affirmed the Stay Order.  The Debtors then appealed the BAP's decision to the United States Court of Appeals for the Tenth Circuit (the "Tenth Circuit").

On February 1, 2012, the Tenth Circuit found Deutsche had not met its burden of proof in showing it was a party in interest entitled to seek relief from the stay.[38]  Specifically, the Tenth Circuit found Deutsche had not demonstrated it held the original note creating the debt on the Debtors' Property, as required by COLO. REV. STAT. § 4-3-201(b). Therefore, the Tenth Circuit concluded and ordered as follows:

> For the foregoing reasons, the evidence is insufficient as it currently stands to establish that Deutsche Bank is a "party in interest" entitled to seek relief from stay.  The bankruptcy court therefore abused its discretion by granting Deutsche Bank relief from stay.

> The Millers raise a number of other objections to the proceedings and orders in the bankruptcy court and the BAP but we need not reach any of them in light of the remand we now order.  The judgment of the BAP is REVERSED and the case is REMANDED to the BAP with

---

[36]  *Id.* at Art. V., p. 5 of 9.

[37]  Docket No. 85.

[38]  Docket No. 158.

instructions to remand to the bankruptcy court for further proceedings in accordance with this opinion.  The Millers' motion for leave to file a supplemental appendix is DENIED.[39]

Thereafter, on February 23, 2012, the BAP issued its *Order Recalling Mandate and Remanding Case to Bankruptcy Court*[40] stating as follows:

> On November 12, 2010, Appellants Mark Miller and Jamileh Miller filed their Notice of Appeal to this Court from the Order on Motion for Relief From Stay, entered November 3, 2010, in which the bankruptcy court determined that Appellee Deutsche Bank National Trust Company could pursue foreclosure proceedings against Appellants' real property (the "Order").  On May 12, 2011, we affirmed the Order (the "BAP Opinion"), and our mandate was entered on May 27, 2011.  On May 19, 2011, Appellants appealed from the BAP Opinion to the United States Court of Appeals for the Tenth Circuit (the "Tenth Circuit").  On February 1, 2012, the Court of Appeals reversed the BAP Opinion and remanded this appeal to us with instructions to remand to the bankruptcy court for further proceedings in accordance with the Opinion.  The Court of Appeals' mandate, a certified copy of its Opinion, was issued on February 23, 2012.  Therefore, consistent with the Opinion of the Court of Appeals it is HEREBY ORDERED that:
>
>> (1) The mandate issued by this Court to the bankruptcy court on May 27, 2011, is RECALLED.
>> (2) This matter is hereby REMANDED to the bankruptcy court for further proceedings in accordance with the Opinion.
>> (3) A copy of the Court of Appeals' Opinion is attached to this Order.[41]

3.   *Procedural History Following Appeal of Order Granting Relief from Stay*

Following the remand of the above-captioned case to this Court and in accordance with the opinions from the Tenth Circuit and the BAP, this Court entered its Order and Notice of Evidentiary Hearing dated March 27, 2012, setting a renewed evidentiary hearing for May 2, 2012, on Deutsche's Motion for

---

[39] *Id.* at 18-19.

[40] Docket No. 163.

[41] *Id.* at 1-2.

Relief from Stay and the Debtors' Objection.  The Court's Order and Notice of Evidentiary Hearing expressly stated:

> The evidence shall be reopened as to all issues relevant to the relief from stay matter, specifically including whether Deutsche Bank is "a 'party in interest' entitled to seek and obtain relief from the automatic stay."  The hearing will not include issues or claims raised in *Mark and Jamileh Miller v. Deutsche Bank et al.*, adversary proceeding no. 10-01757-MER.[42]

On or about April 20, 2012, the Debtors propounded written discovery to Deutsche, requesting responses by May 20, 2012.[43]  On April 25, 2012, the Debtors filed their first *Motion for Continuance* of the evidentiary hearing pending completion of discovery and for lack of notice of the hearing.[44]  The Court entered an Order dated April 27, 2012, extending the deadline to exchange witness lists and exhibits, extending the deadline to conduct discovery, and continuing the one-half day evidentiary hearing on the contested Motion for Relief from Stay to July 10, 2012.[45]

Pursuant to the Court's Order of April 27, 2012, the Debtors and Deutsche timely filed their respective lists of witnesses and exhibits on June 26, 2012,[46] and the deadline for filing and exchanging witness lists and exhibits has expired.  Deutsche timely filed its Objection to Witness Listed in Debtors' Will Call Witness List,[47] objecting to the Debtors' designation of Susan J. Hendrick, counsel for Deutsche, as a witness at the evidentiary hearing on the pending Motion for

---

[42] Docket No. 164 (quoting *Miller v. Deutsche Bank Nat'l Trust Co.* (*In re Miller*), 666 F.3d 1255, 1258 (10th Cir. 2012)).  The same Order also provides "Deutsche Bank must address whether it is in possession of the original promissory note executed by the Debtors." *Id.* at n.2.

[43] Docket No. 168.  The Debtors, although not required to file discovery requests with the Court, filed a copy of their fifty-two page *Notice to Produce Within 30 Days*, *Request for Interrogatories*, *Request for Production of Documents*, and *Request for Admissions* (Docket No. 168) on April 23, 2012.  The Court reviewed and considered the Debtors' interrogatories and requests for production of documents in conjunction with the discovery dispute between the parties.  The requests for admission were not at issue in the dispute.

[44] Docket No. 169.  The Debtors also filed their *Objections to Unnoticed Hearing Set for May 2, 2012* (Docket No. 172) in connection with their motion to continue the hearing.

[45] Docket No. 173.

[46] Docket Nos. 193 and 194.

[47] Docket No. 203.

Relief from Automatic Stay.  The Debtors did not file any objections to Deutsche's witnesses or exhibits.  On July 18, 2012, the Court entered its Order sustaining Deutsche's objection to the Debtors' witness list, striking the designation of Susan J. Hendrick from the Debtors' List of Witnesses.[48]

On May 21, 2012, Deutsche timely delivered its responses to the Debtors' discovery requests.[49]  On May 21, 2012, Deutsche also timely filed a *Motion for Protective Order*[50] with respect to the Debtors' request for interrogatories.  Two days later, on May 23, 2012, the Court entered its Order Setting Date for Response to Motion for Protective Order.[51]  On June 4, 2012, the Debtors timely filed their *Response to Motion for Protective Order*,[52] along with their Motion to Compel.[53]  On June 18, 2012, Deutsche filed its *Response to Motion to Compel*.[54]  By Deutsche's timely filing the Motion for Protective Order, the deadline to respond to the interrogatories in question was stayed pending further order of the Court.[55]  On July 18, 2012, the Court entered its Order denying the Debtor's Motion to Compel, and granting in part and denying in part Deutsche's Motion for Protective Order.[56]  Deutsche submitted its responses to interrogatories in compliance with the Court's Order within the extended deadline.[57]

On June 26, 2012, the Debtors filed their second *Motion for Ninety (90) Day Continuance of the Hearing Set for July 10, 2012 Based Upon Unresolved*

---

[48]  Docket No. 208.

[49]  *See* Debtors' Motion to Compel, Docket No. 183, at p.2, ¶3.  A copy of Deutsche's *Response to Request for Production of Documents* was filed with the Court on July 2, 2012.  Docket No. 202.

[50]  Docket No. 179.

[51]  Docket No. 180.

[52]  Docket No. 182.  The Court notes the Debtors, although not required to file their responses to written discovery with the Court, filed a copy of their *Response to Interrogatories, Request for Production of Documents and Request for Admissions to Mark Stanley Miller and Jamileh Miller* (Docket No. 188) on June 18, 2012.

[53]  Docket No. 183.

[54]  Docket No. 189.

[55]  *See* L.B.R. 7026-1(d).

[56]  Docket No. 209.  The Court incorporates all findings as set forth in the Order (Docket No. 209).

[57]  *See* Docket No. 216.

*Discovery Disputes and for Medical Reasons Ordered By the Debtor's Medical Service Providers*,[58] seeking another ninety-day continuance of the evidentiary hearing on the pending Motion for Relief from Automatic Stay for the following reasons: 1) the need for resolution of Deutsche's Motion for Protective Order, the Debtors' Motion to Compel, and the responses thereto; and 2) Jamileh Miller underwent unexpected major surgery on June 20, 2012, with an anticipated recovery of six to eight weeks.  The Court entered an Amended Order and Notice of Continued Hearing, continuing the evidentiary hearing on the pending Motion for Relief from Stay to October 5, 2012.[59]  The Court made it clear no further continuances of the evidentiary hearing would be considered or granted by the Court.[60]

On September 6, 2012, the Debtors filed their *Motion for Summary Judgment Under Rule 7056*, seeking a determination that Deutsche was not a creditor, a holder in due course of the Note, or a transferee in connection with the Note.[61]  On September 19, 2012, Deutsche filed its *Response to the Motion for Summary Judgment*, asserting the issue of standing is a genuine issue of material fact preventing summary judgment.[62]  On September 25, 2012, the Debtors filed their Sur-Reply to the Response, alleging no genuine issues of material fact existed and the Response failed to raise any facts in dispute.[63]  On October 1, 2012, the Court entered its Notice of Hearing, stating the Court would hear oral arguments on the Motion for Summary Judgment and Response at the evidentiary hearing on the Motion for Relief from Stay.[64]  At the hearing, the Court denied the Motion for Summary Judgment, concluding genuine issues of material fact existed regarding the issue of standing.[65]

---

[58] Docket No. 195.

[59] Docket No. 206.

[60] *Id.*

[61] *See* Docket No. 217.

[62] Docket No. 223, at p. 4.

[63] Docket No. 224.

[64] Docket No. 225.

[65] A separate order is issued contemporaneously herewith detailing the Court's ruling on the Debtors' Motion for Summary Judgment and Deutsche's objection thereto.

## DISCUSSION

The Court previously explained the scope of the evidentiary hearing in its Order dated May 4, 2012, denying the Debtors' Motion to Dismiss Hearing Under Rule 12(b)(6):

> This Court must comply strictly with the mandate rendered by a reviewing court, in this case, the Tenth Circuit and the BAP in its order complying with the Tenth Circuit's mandate. *Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 306 (1948); *Ute Indian Tribe of the Uintah and Ouray Reservation v. State of Utah*, 114 F.3d 1513, 1520-1521 (10th Cir. 1997); *Georgacarakos v. United States*, 211 Fed.Appx. 730, 732 (10th Cir. January 3, 2007). Accordingly, this Court must conduct further proceedings in accordance with the Opinion of the Tenth Circuit, as directed by the BAP. As noted above, the Tenth Circuit observed the evidence presented by Deutsche Bank is "insufficient as it currently stands." Therefore, in compliance with the Tenth Circuit's instructions, this Court has set a new hearing to determine what, if any, additional evidence needs to be or can be produced by Deutsche Bank, and, if appropriate, by the Millers, to facilitate the correct resolution of the Motion for Relief from Automatic Stay. In addition, the Court is mindful of the Tenth Circuit's preference for determining matters on their merits. *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970) ("The preferred disposition of any case is upon its merits . . . ."); *see also Gatrell v. City and County of Denver*, 2012 WL 219434, *1 (D. Colo. January 23, 2012) (noting the judicial system's strong preference for resolving cases on their merits).[66]

The Tenth Circuit did not at any time issue a final decision on the merits of the standing issue. Rather, the Tenth Circuit's opinion remanded the issue to this Court for an evidentiary hearing to determine whether Deutsche can demonstrate standing and ultimately establish whether relief from stay is appropriate.

On October 5, 2012, the Court held the evidentiary hearing in accordance with the directives of the Tenth Circuit and BAP opinions. After considering the evidence submitted at the evidentiary hearing, the Court again concludes relief from stay is warranted.

---

[66] Docket No. 176, at p. 3.

## A.    The Note and Deed of Trust are Self-Authenticating Admissible Evidence

### 1.    Self-Authenticating Evidence is Entitled to Prima Facie Authenticity

The Federal Rules of Evidence govern proceedings before the United States bankruptcy judges.[67]  "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."[68] Generally, documents may be authenticated through extrinsic evidence, including but not limited to testimony from a witness with personal knowledge.[69]

However, the Federal Rules of Evidence expressly carve out certain limited classes of evidence as self-authenticating, or inherently reliable and trustworthy.[70]  Rule 902 accords *prima facie* authenticity for such evidence, providing in pertinent part as follows:

The following items of evidence are self-authenticating; **they require no extrinsic evidence of authenticity in order to be admitted**:

. . .

(4) Certified copies of public records. A copy of an official record--or a copy of a document that was recorded or filed in a public office as authorized by law--if the copy is certified as correct by:

---

[67]  FED. R. EVID. 101.

[68]  FED. R. EVID. 901(a).

[69]  FED. R. EVID. 901(b).  An opponent may challenge evidence offered under Rule 901(a) by offering contradictory evidence or challenging the credibility of supporting proof. If challenged, contradictory evidence goes to the weight assigned by the trier of fact, not to admissibility.  *See Harolds Stores, Inc. v. Dillard Dept. Stores, Inc.*, 82 F.3d 1533, 1544 (10th Cir.), *cert. denied*, 519 U.S. 928 (1996).  *See also Sec. Farms v. Int'l Broth. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1011 (9th Cir. 1997) (The sufficiency of authentication rests in the sound discretion of the court); *Colorado Citizens for Ethics in Gov't v. Comm. for Am. Dream*, 187 P.3d 1207, 1213 (Colo. App. 2008) ("Whether a proper foundation has been established for documentary evidence is a matter within the sound discretion of the trial court, whose decision will not be disturbed absent a clear abuse of discretion.") (citing *People v. Huehn*, 53 P.3d 733, 737 (Colo. App. 2002)).

[70]  *See* FED. R. EVID. 902.

(A) the custodian or another person authorized to make the certification; or
(B) a certificate that complies with Rule 902(1), (2), or (3), a federal statute, or a rule prescribed by the Supreme Court.

. . .

(9) Commercial Paper and Related Documents. Commercial paper, a signature on it, and related documents, to the extent allowed by general commercial law.[71]

Rule 902 strikes a balance in favor of self-authentication for certain enumerated evidence because the likelihood of fabricating such evidence is slight versus the time and expense which would be required for authentication through extrinsic evidence.  When a self-authenticating document is offered under Rule 902, the proponent is relieved of the requirement to lay foundation or present testimony through a witness.[72]  In other words, if a document is self-authenticating, the general authentication requirement of Rule 901 is deemed satisfied.

2.    *Admissibility of Self-Authenticating Evidence*

Self-authentication and admissibility are distinct issues.  If the Court determines a document is self-authenticating by operation of Rule 902, the document is admissible in the absence of a challenge to admissibility.[73] However, *prima facie* authenticity does not preclude an opponent from challenging the admissibility or genuineness of the original document by offering contradictory evidence.[74]

When an opponent challenges the admissibility of self-authenticating documents, Rule 902 shifts the burden of producing evidence to the opponent but leaves the burden of persuasion as to authenticity with the party offering

---

[71]  FED. R. EVID. 902(4) and (9) (emphasis added).

[72]  *See* FED. R. EVID. 902.

[73]  FED. R. EVID. 902; *see also Ball v. A.O. Smith Corp.*, 321 B.R. 100, 106 (N.D.N.Y. 2005) *aff'd*, 451 F.3d 66 (2d Cir. 2006).

[74]  Although Rule 902 makes evidence self-authenticating, the evidence must still meet other requirements such as the hearsay rule in order to be admitted. *United States v. Mirelez*, 59 F. App'x 286, 287, n.1 (10th Cir. 2003).

the evidence.[75]  Thus, if the opponent offers no proof contesting the authenticity of self-authenticating evidence, the Court will admit the offered document into evidence.  On the other hand, if the opponent offers evidence contesting admissibility and that evidence would be sufficient to convince a reasonable person the item was not genuine, the opponent meets its burden of production and Rule 902 has no further effect unless the proponent presents rebuttal evidence sufficient to disprove the opponent's evidence.[76]

In addition, the Federal Rules of Evidence provide for the admissibility of copies of otherwise admissible original documents.  Pursuant to Rule 1003, if an original document is admissible, "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."[77]

### 3.    The Debtors' Objections to the Note and Deed of Trust

Here, the dispute between the parties centers on two key documents - the Note and the Deed of Trust.  As a preliminary matter, the Court finds the Note and Deed of Trust are not only relevant evidence, but also necessary evidence to the determination of whether relief from stay is proper.  At the outset of the hearing, counsel for Deutsche presented the Debtors with the original Note and a copy of the Deed of Trust certified by the Jefferson County Clerk and Recorder.  Counsel for Deutsche also tendered the original Note and the certified copy Deed of Trust to the Court for inspection.  The Court carefully reviewed each document, and determined the Note contained original "wet blue ink" initials or signatures on each page, and the Deed of Trust was indeed a certified copy of a public record.  Following the Court's review, counsel for Deutsche represented Exhibits 1 and 2 were accurate and complete copies of these documents, and moved to admit Exhibits 1 and 2 as self-authenticating commercial paper under Rule 902(9) of the Federal Rules of Evidence.

The Debtors objected to admission of Exhibits 1 and 2 by challenging the authenticity of the original Note and certified copy of the Deed of Trust,

---

[75]  *See* 31 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE EVID. § 7134 (1st ed. 2004).

[76]  *Id.*; *see also U.S. v. Bisbee*, 245 F.3d 1001, 1006 (8th Cir. 2001) (Rule 902 does not create a rebuttable presumption, rather a document properly authenticated under Rule 902(4) is admissible even if opponent presents evidence that contents of document were incorrect).

[77]  FED. R. EVID. 1003.  "Therefore, if no genuine issue exists as to authenticity and no other reason exists for requiring the original, a duplicate is admissible under the rule."  *Id.* advisory committee's note.

challenging the chain of custody of the original Note and certified copy of the Deed of Trust, and contending Exhibits 1 and 2 were not true and accurate copies of the originals.[78]  Consistent with the Court's prior orders, "all objections except foundation and relevancy are waived"[79] unless written objections directed to exhibits were filed with the Court and served on opposing counsel within the extended deadline of July 3, 2012.[80]  The Debtors **_did not_** file any written objections to Deutsche's exhibits within the extended deadline, and therefore, waived any right to challenge the authenticity of Exhibits 1 and 2.

Despite finding they waived their right to object, the Court provided the Debtors with the opportunity to challenge the admissibility of the self-authenticated documents.  As set forth below, the Court finds the Debtors presented insufficient evidence to overcome the presumption of admissability of the duplicates of the self-authenticating documents.  Therefore, they are admitted for all purposes.

The Debtors challenged the authenticity of the Note solely through their own testimony.  While Mr. Miller admitted the Debtors purchased the Property in 2006, took out a loan to purchase the Property, attended a closing and executed closing documents, Mr. Miller would not admit nor deny whether he ever saw or signed a promissory note in favor of IndyMac.  Mr. Miller testified the signature on the Note "does not appear" to be his signature.

Mrs. Miller could not recall purchasing the Property, attending a closing, how the Debtors paid for the Property, how long they owned the property and

---

[78]  Chain of custody testimony regarding continuous possession and condition of an item during possession is elicited from witnesses with personal knowledge under FED. R. EVID. 602.  Pursuant to FED. R. EVID. 901(b)(1), chain of custody testimony is needed to authenticate evidence not readily identifiable.  Self-authenticating documents do not require extrinsic evidence through chain of custody testimony.  FED. R. EVID. 902.  Accordingly, the Debtors' objection is inapplicable to the evidence offered - the Note and the Deed of Trust.  In addition, the Court ruled on the record Colorado law does not require chain of custody testimony for a promissory note because a promissory note is a freely transferrable negotiable instrument.  COLO. REV. STAT. § 4-3-104; *see also Barclay Receivables Co. v. Mountain Majesty, Ltd.*, 903 P.2d 37, 39 (Colo. App. 1995); *Myrick v. Garcia*, 332 P.2d 900, 903 (Colo. 1958); *Bank of Broomfield v. McKinlay*, 125 P. 493, 494 (Colo. 1912).  Further, possession of the original Note indorsed in blank and a certified copy of the Deed of Trust from the clerk and recorder is sufficient to demonstrate self-authentication of these documents.  *Smith v. Weindrop*, 833 P.2d 856, 857-58 (Colo. App. 1992); *see also Burenheide v. Wall*, 281 P.2d 1000 (Colo. 1955); *Reed v. First National Bank*, 48 P. 507 (Colo. 1897).

[79]  Docket No. 164.

[80]  Docket Nos. 164 and 173.

whether they made any mortgage payments.  Mrs. Miller denied ever seeing the Note, stated the signature and initials on the Note were not hers, and contended the Note had been altered or manufactured.  The Court noted its concern with the Debtors' respective inability to recall whether they ever signed documents when they closed on the Property.  Ultimately, the Court concludes the Debtors' respective testimony regarding authenticity and the Debtor's objections to admission of Exhibits 1 and 2 was evasive, unconvincing and entirely lacking credibility.

Further, with respect to the truthfulness and accuracy of Exhibits 1 and 2 as copies of the original Note and a certified copy of the Deed of Trust, the Debtors argued Deutsche never produced the originals to them, and the Debtors never received copies of the Note or Deed of Trust.  The evidence presented at the hearing proves the Debtors' arguments are without merit.  In April 2012, counsel for Deutsche sent a letter to the Debtors inviting the Debtors to view the original Note and certified copy of the Deed of Trust by appointment during normal business hours.  The Debtors testified they did not respond to this invitation, or avail themselves of the opportunity to view the originals in advance of the evidentiary hearing because they were busy.[81]  Furthermore, the Court's review of the record in this case confirms Deutsche attached copies of the Note and Deed of Trust to its Motion for Relief from Stay filed October 7, 2010.[82]  Deutsche also attached copies of the Note and Deed of Trust to its Motion to Dismiss Adversary Proceeding filed in the Adversary Proceeding on November 19, 2010.[83]  In addition, the Debtors filed a copy of the Note as

---

[81]  The Court is unaware of any authority requiring Deutsche to relinquish possession of the original Note to the Debtors, as they contended at the hearing.

[82]  Docket No. 64.  Further, Deutsche's Motion for Protective Order alleges "[c]opies of the Note and Deed of Trust were attached to the motion to dismiss in the adversary action, to the motion to dismiss in the separate state court action, and in the various appeals before the BAP, Tenth Circuit Court of Appeals and the Colorado Court of Appeals."  Docket No. 179, at p. 20.  This Court has independently reviewed the referenced pleadings filed in the Debtor's bankruptcy case and the related adversary proceeding, and has confirmed the copies of the Note and Deed of Trust attached thereto are accurate copies of original of those documents presented to the Court at the evidentiary hearing.  The difference between the copies of the Note and Deed of Trust attached to pleadings and those submitted at the hearing is the former contained redacted loan numbers and personal identifiers in accordance with L.B.R. 1007-5(d).

[83]  Deutsche's Motion to Dismiss Adversary Proceeding, Adv. Proc. No. 10-01757-MER, Docket No. 9.  CitiMortgage also attached, among other documents, a copy of the Note to its Motion to Dismiss Adversary Proceeding filed on November 19, 2010.  CitiMortgage's Motion to Dismiss Adversary Proceeding, Adv. Proc. No. 10-01757-MER, Docket No. 11.

Exhibit 2 to their Complaint in the Adversary Proceeding.[84]  To suggest they never saw a copy of the note until the evidentiary hearing is belied by the record.  The Debtors willingly chose not to avail themselves of the opportunity to review the originals in advance of the evidentiary hearing, and failed to obtain a handwriting expert to support their claims.  The Court therefore finds the Debtors' challenge to authenticity of their signatures is not credible.

On the other hand, the Court finds the testimony of Ms. Barbara Campbell was credible.  Ms. Campbell is a vice president of the mortgage-backed securities division of Deutsche.  Based on her commercial experience and personal knowledge, Ms. Campbell testified the Note appears to be the original promissory note for the Property.  Although no extrinsic evidence is required, Ms. Campbell's testimony bolsters the Court's independent finding the Debtors' testimony is not credible, and the Note and Deed of Trust are authentic.

> 4.    *The Note is Self-Authenticating Commercial Paper, and Exhibit 1 is Admissible as a Duplicate of the Note.*

The Court inspected the original Note.  Pursuant to FED. R. EVID. 902(9), promissory notes are considered self-authenticating commercial paper,[85] and do not require a witness or extrinsic evidence of authenticity.[86]  "Mere production of a note establishes prima facie authenticity and is sufficient to make a promissory note admissible."[87]  Based on its review of the original Note produced at the evidentiary hearing, the Court finds Deutsche has established *prima facie* evidence as to the authenticity of the Note.

As set forth above, the Court finds the Note is not a forgery and the Debtors signed and initialed the original Note.  The Court determines the Debtors have failed to present any credible evidence to contradict the authenticity and admissibility of the Note.  The Debtors' testimony is insufficient to convince a reasonable person the original Note is not genuine.[88]  Accordingly,

---

[84]  Exhibits A through C for Complaint, Adv. Proc. No. 10-01757-MER, Docket No. 3.

[85]  *See* COLO. REV. STAT. § 4-3-308(a).  "Section 3-308 is a modification of former Section § 3-307.  The first two sentences of subsection (a) are a restatement of former Section 3-307(1)."  *Id.* official comment 1.

[86]  FED. R. EVID. 902.

[87]  *United States v. Varner*, 13 F.3d 1503, 1509 (11th Cir. 1994) (citing *United States v. Carriger*, 592 F.2d 312, 316-17 (6th Cir. 1979)).  Further, the contents of a promissory note are admissible as an exception to hearsay under FED. R. EVID. 803(15).

[88]  31 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE EVID. § 7134 (1st ed. 2004).

the Court concludes the original Note satisfies the requirements of Rule 902(9) pertaining to self-authentication, and is admissible evidence.

Upon comparing the original Note to Exhibit 1, the Court concluded Exhibit 1 was a true, complete and accurate copy of the self-authenticated Note.  The sole difference noted by the Court between the copy and the original was a reduction in size.  Therefore, the Court admitted Exhibit 1 into evidence over the Debtors' objections, and hereby reaffirms that ruling.

     5.    *The Deed of Trust is a Self-Authenticating Certified Copy of a Public Document, and Exhibit 2 is Admissible as a Duplicate of the Deed of Trust.*

The Court also inspected the certified copy of the Deed of Trust.  The certified copy of the Deed of Trust contains the recording information from both the Jefferson County Clerk and Recorder and the Arapahoe County Clerk and Recorder.  The Court finds the Deed of Trust is an official record maintained by Jefferson County.  The certified copy of the Deed of Trust tendered to the Court contained a notarized certification by the Jefferson County Clerk and Recorder as to the truthfulness and correctness of that document.[89]  As set forth above, the Court finds the Debtors' testimony challenging the authenticity of the Deed of Trust was not credible–even more so with respect to the certified copy of this public record.  As with the Note, the Court finds the certified copy of the Deed of Trust is not a forgery.  Accordingly, the certified copy of the Deed of Trust satisfies the requirements of Rule 902(4) pertaining to self-authentication, and requires no extrinsic evidence as to authenticity.

Upon comparing the original certified copy of the Deed of Trust to Exhibit 2, the Court concluded Exhibit 2 was a true, complete and accurate copy of the self-authenticated certified copy of the Deed of Trust.  Like the Note, the only discernable difference between the copy and the original was a reduction in size. Therefore, the Court admitted Exhibit 2 into evidence over the Debtors' objections, and hereby reaffirms that ruling.

The Court concludes no genuine issues exist as to authenticity of the Note (Exhibit 1) nor to the Deed of Trust (Exhibit 2).  The Debtors' eleventh-hour attempt to challenge the authenticity of the Note and Deed of Trust are without merit.  The Court's own review of the originals reveals the Note and Deed of Trust, and the copies of these documents, are indeed authentic, and the copies of the originals are true and accurate copies.  Therefore, Exhibits 1 and 2 were properly admitted for consideration.

---

[89] *See* Exhibit 2 at p. 1.

**B.      Deutsche is a "Party in Interest" Entitled to Seek Relief from Stay**

The primary issue remanded to this Court is whether Deutsche is a "party in interest" entitled to seek relief from stay.  The Bankruptcy Code defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief[,]"[90] and defines a "claim" as a "right to payment . . . ."[91]  Accordingly, this Court must determine whether Deutsche has a right to payment against the Debtors under the Note.  The Court determines the answer is yes.

Under the Bankruptcy Code, property rights issues are generally a matter of state law.[92]  The Property is located in Colorado, and the parties do not dispute Colorado law applies.  Under Colorado law, the holder of the evidence of debt is the party with the substantive right to enforce the terms of a promissory note secured by a deed of trust.[93]  The Tenth Circuit previously explained how Colorado law would classify the Note executed by the Debtors:

Under Colorado law, a promise or order such as the Note is payable "to order" "if it is payable (i) to the order of an identified person or (ii) to an identified person or order." COLO. REV. STAT. § 4-3-109(b). The

---

[90]   § 101(10)(A).

[91]   § 101(5)(A).

[92]   *In re Tracy Broad. Corp.*, 2012 WL 4874485, at *2 (10th Cir. Oct. 16, 2012) (citing *Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450-51 (2007) ("[W]e have long recognized that the basic federal rule in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in assets of a bankrupt's estate to state law." (internal quotation marks omitted)); *Miller*, 666 F.3d at 1262 (state law determines whether a party has a "right to payment" under the Bankruptcy Code because within "the context of a bankruptcy proceeding, state law governs the determination of property rights" (internal quotation marks omitted))).

[93]   *McDonald v. One West Bank, F.S.B.*, 680 F.3d 1264, 1266 (10th Cir. 2012), explained as follows:

In Colorado, non-judicial foreclosure based upon a violation of a deed of trust provision can be accomplished by "a holder of an evidence of debt." COLO. REV. STAT. § 38-38-101(1). The "holder of an evidence of debt" includes a "person entitled to enforce an evidence of debt" and presumptively includes "[t]he person in possession of a negotiable instrument evidencing a debt, which has been duly negotiated to such person or to bearer or indorsed in blank." *Id.* § 38-38-100.3(10)(c); *see also id.* § 4-1-201(20).  As the commercial code makes clear, a person entitled to enforce an instrument may be a holder, and need not be an owner, of the instrument.  *Id.* § 4-3-301.

Note at issue here is payable "to the order of Lender. Lender is IndyMac Bank, F.S.B., a federally chartered savings bank[.]" Aplt. App., Vol. I at 14. Thus, the Note is payable to the "order" of IndyMac Bank under § 4-3-109(b).

But "[a]n instrument payable to an identified person [such as IndyMac Bank] may become payable to bearer if it is indorsed in blank pursuant to section 4-3-205(b)." COLO. REV. STAT. § 4-3-109(c). Section 4-3-205(b) provides that "[i]f an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be *negotiated by transfer of possession alone until specifically indorsed.*" (emphasis added).[94]

Here, the Court examined the original Note, and consistent with its previous findings, determines there is no question the Note was indorsed in blank.[95] Therefore, the Note became payable to the bearer and the Note was freely negotiable by transfer of possession.

In order to "negotiate" a promissory note, Colorado law requires "transfer of possession . . . to a person who thereby becomes its holder."[96] A person is defined as "an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, government, government subdivision, agency, or instrumentality, or any other legal or commercial entity."[97] Deutsche is a "person" within the scope of these statutes because Deutsche is a corporation.

"[I]f an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder."[98] "Possession is an element designed to prevent two or more claimants from qualifying as holders who could take free of the other party's claim of ownership."[99] "In the case of bearer paper such as the Note, physical

---

[94] *Miller*, 666 F.3d at 1263 (footnote omitted).

[95] *See* Exhibit 1.

[96] COLO. REV. STAT. § 4–3–201(a).

[97] COLO. REV. STAT. § 4–1–201(26).

[98] COLO. REV. STAT. § 4–3–201(b).

[99] *Georg v. Metro Fixtures Contractors, Inc.*, 178 P.3d 1209, 1213 (Colo. 2008) (citation omitted).

possession is essential because it constitutes proof of ownership and a consequent right to payment."[100]  Deutsche proved it has physical possession of the Note by presenting the original Note to the Debtors and the Court at the hearing.[101]  There is no doubt Deutsche is the current holder of the original Note.  Therefore, Deutsche is the real "party in interest" entitled to seek relief from stay.

Further, as independent grounds evidencing Deutsche has standing to seek relief from stay, Deutsche demonstrated it may enforce the Note as the transferee.  Pursuant to COLO. REV. STAT. § 4–3–203, a promissory note may be enforced by a transferee if the note was delivered to the transferee.  "Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument."[102]  "An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument."[103]  In Colorado, "delivery" of an instrument is defined as "voluntary transfer of possession" of the instrument.[104]  Because Deutsche Bank proved transfer of possession of the original Note, and therefore delivery of the Note, Deutsche has also established its status as a transferee entitled to enforce the Note.

The Court holds Deutsche has clearly established it is in possession of the original Note and has thus demonstrated its standing to seek relief from stay under § 362 with respect to the Property.

## C.    Relief from the Automatic Stay is Proper

With respect to obtaining relief from the automatic stay, § 362(d) provides in pertinent part as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

---

[100]  *Miller*, 666 F.3d at 1263-64.

[101]  Ms. Campbell also testified the original Note was in the possession of Deutsche until submitted to counsel for the purposes of the evidentiary hearing.

[102]  COLO. REV. STAT. § 4–3–203(b).

[103]  COLO. REV. STAT. § 4–3–203(a).

[104]  COLO. REV. STAT. § 4–1–201(b)(14).

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization;

Section 362(g) allocates the burden of proof for motions seeking relief from the automatic stay.[105]  Deutsche as the party seeking relief from stay has the burden of proof on the Debtors' equity in the real property at issue, and the Debtors opposing such relief have the burden of proof on all other issues.[106]  The evidentiary hearing on the Motion for Relief from Automatic Stay "constitutes a summary proceeding wherein the only question is whether the party seeking relief has a colorable claim to property of the estate; it is not a proceeding where a bankruptcy court determines substantive rights."[107]

> 1.    *Lack of adequate protection of Debtors' interest in the Property pursuant to § 362(d)(1).*

"Cause" for relief from the automatic stay is not necessarily limited to lack of adequate protection.[108]  When a creditor seeks relief for "cause" other than a lack of equity, it must make a *prima facie* showing of "cause."[109]  Failure to

---

[105]  *See* § 362(g)(1) and (2).

[106]  *Id.*

[107]  Docket No. 176, at p.3-4 (citing *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 33 (1st Cir.1994).  *See also In re Roberts*, 367 B.R. 677, 686 (Bankr. D. Colo. 2007) (citing *Grella*).

[108]  *In re JE Livestock, Inc.*, 375 B.R. 892, 897 (B.A.P. 10th Cir. 2007) ("While cause under § 362(d)(1) includes 'the lack of adequate protection of an interest in property,' it is not so limited. . . . Because 'cause' is not further defined in the Bankruptcy Code, relief from stay for cause is a discretionary determination made on a case by case basis.")

[109]  *See Wilson v. Unioil (In re Unioil)*, 54 B.R. 192, 194 (Bankr. D. Colo. 1985) ("Once the party seeking relief from stay establishes a legally sufficient basis, i.e ., 'cause,' for such relief, the burden then lies with the debtor to demonstrate that it is entitled to the stay.").

make post-petition payments on mortgages outside a plan can establish cause for relief from stay.[110]

Here, Deutsche must establish facts indicating sufficient "cause" exists to lift the automatic stay, and the Debtors must then demonstrate why the stay should not lifted.  Deutsche presented evidence through the testimony of Justin Rock, representative of OWB as servicer for Deutsche on the subject loan, establishing the Debtors have not made a single post-petition payment in connection with the Note to Deutsche, OWB, or any other entity.  The Debtors did not offer any evidence to contradict this testimony.  Accordingly, the Court determines sufficient "cause" exists to lift the stay under § 362(d)(1).

As an independent ground establishing "cause" to lift the stay under § 362(d)(1), the Court may apply "a balancing test to weigh the hardships suffered by the creditor under the automatic stay against those suffered by the Debtors' if the stay is lifted."[111]  The Court finds Deutsche is harmed by the continuation of the automatic stay with respect to the Property.  In this case, the Debtors have affirmatively stated the value of the Property is $195,000 and the secured liens against the Property total $265,511.[112]

Deutsche's position is not well protected.  As the months pass without the Debtors making any payments to Deutsche, the amount of debt against the Property increases.  No evidence was presented by either party as to a change in value of the Property.

Conversely, the harm to the Debtors if the stay is lifted would mean losing their residence.  However, the Debtors' bankruptcy case has been pending for over two years and four months, and the Debtors have enjoyed the benefit of continuously residing at the Property post-petition without making a single mortgage payment to any entity since April 2009.[113]  After balancing the equities

---

[110] *In re Rouse*, 301 B.R. 86, 90 (Bankr. D. Colo. 2003) (citing *In re Dupell*, 235 B.R. 783, 788 (E.D. Penn 1999) (stating "a debtor's post-petition default in mortgage payments meets the mortgagee's initial burden of production in establishing "cause" for relief under Section 362(d)(1).");  *In re Binder*, 224 B.R. 483, 491 (Bankr. D. Colo. 1998)).

[111] *In re Rouse*, 301 B.R. at 89 (citing *In re Caldwell*, 101 B.R. 728, 732 (Bankr. D. Utah 1989);  *In re Opelika Mfg. Corp.*, 66 B.R. 444, 449 (Bankr. N.D. Ill. 1986)).

[112] Debtors' Amended Schedule A, Docket No. 20.

[113] Based on Mr. Justin Rock's testimony at trial, the Debtors have not made a single post-petition payment to Deutsche or any other entity in connection with the Property since April 2009.  The Debtors did not offer or present any evidence they made post-petition payments on the Note.  During closing arguments, Mr. Miller conceded the Debtors did not offer any evidence of making post-petition payments.

in this case, the Court concludes Deutsche has met its burden and relief from stay is proper for cause under this balancing test as well.

> 2.     There is no equity in the Property and the Property is not necessary for an effective reorganization pursuant to 11 U.S.C. § 362(d)(2)(A) and (B).

Generally, valuation to determine equity forms a key part of the analysis of motions brought under § 362(d)(2).[114]  The Debtors listed the Property on their Amended Schedule A as being owned jointly in "fee simple" with a current value of $195,000, and secured claims against the Property in the aggregate amount of $265,511.[115]  Amended Schedule A notes the Property was in foreclosure as of the Petition Date with a sale date of June 23, 2010.  The Debtors listed the following secured claims against the Property on their Amended Schedule D: 1) Indymac Bank Home Loan, for a first mortgage incurred in April 2006, $214,302.00; 2) Indymac Bank Home Loan, for a second mortgage incurred in April 2006; $51,209.00; 3) Deutsche, for a first mortgage incurred in February 2010, $0 (contingent, unliquidated and disputed); and 4) CitiMortgage, Inc., for second mortgage incurred in July 2006, $0 (contingent, unliquidated and disputed).[116]  Based on the Debtors' admissions in Amended Schedules A and D made under the penalty of perjury, the liens against the Property exceed the value of the Property.

"Statements contained in bankruptcy schedules are executed under penalty of perjury and when offered against the debtor are eligible for treatment as judicial admissions."[117]  "All of the liens on the property must be taken into consideration in determining whether the Debtor has equity in the property."[118]  Therefore, based on the Debtors' admissions in their Schedules, Deutsche has established the Debtors lack any equity in the Property.

---

[114]   *See In re YL West 87th Holdings I, LLC*, 423 B.R. 421, 428 (Bankr. S.D. N.Y. 2010) ("In making its determination with respect to valuation, a court should sift through the appraisal and testimony and make a judgment as to the 'accuracy and credibility' of the appraisers.").

[115]   Debtors' Amended Schedule A, Docket No. 20.

[116]   Debtors' Amended Schedule D, Docket No. 20.

[117]   *Miles v. Wells Fargo Bank*, 2010 WL 3894048 (D. Colo. 2010) (unreported) (quoting *In re Bohrer*, 266 B.R. 200, 201 (N.D. Cal. 2001) *citing Matter of Gervich*, 570 F.2d 247, 253 (8th Cir. 1978)).

[118]   *In re Koch*, 2010 WL 1839345, at *2 (Bankr. D. Colo. Apr. 9, 2010) (unreported) (citing *In re Steffens*, 275 B.R. 570, 577 (Bankr. D. Colo. 2002)).

Once Deutsche established the lack of any equity, the burden shifted to the Debtors to show that there is "'a reasonable possibility of a successful reorganization within a reasonable time.'"[119]  According to the Debtors' Objection, the Debtors use the Property to conduct their small business. However, this representation alone is not sufficient to deny a relief from stay motion.[120]  Rather, as the Supreme Court has stated, to show a property is necessary for an effective reorganization requires:

> [N]ot merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means, as many lower courts . . . have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."[121]

Here, the Debtors proposed six unsuccessful plans of reorganization over the first year of this case.  Five of those plans have been denied, and the Court held the confirmation issues for the sixth in abeyance pending this Order and resolution of the Debtors' related adversary proceeding.[122]  The Debtors have admitted at the hearing they have not made any post-petition payments to Deutsche or any other party outside the plan in connection with the Property throughout the pendency of their case.  The Debtor's presented no evidence they had the wherewithal to propose a plan in which the accruing arrearages on the Property could be paid.  Thus, the Court is hard pressed to find the Property is necessary for an **effective** reorganization when the Debtors have failed to propose a feasible plan.   As a result, the Court finds there is not a reasonable possibility of a successful reorganization within a reasonable amount of time.  Accordingly, the Court determines relief from stay is also proper under § 362(d)(2).

---

[119] § 362(g).  *See also United Sav. Ass'n v. Timbers of Inwood Forest*, 484 U.S. 363, 376 (1988) (quoting *In re Timbers of Inwood Forest Associates , Ltd.*, 808 F.2d 363, 370-71 (5th Cir. 1987)).

[120] *In re Gunnison Ctr. Apartments, LP*, 320 B.R. 391, 401 (Bankr. D. Colo. 2005) (citing *In re Holly's, Inc.*, 140 B.R. 643, 703-704 (Bankr. W.D. Mich. 1992); *Albany Partners Ltd. v. Westbrook*, 749 F.2d 670, 673 n. 7 (11th Cir. 1984) ("the mere fact that the property is indispensable to the debtor's survival is insufficient.")).  *See also In re Koch*, 2010 WL 1839345 (Bankr. D. Colo. 2010) (unreported).

[121] *Timbers*, 484 U.S. at 370. Although *Timbers* involved a question under § 362(d)(1), it nevertheless provided the framework and analysis for evaluating relief from stay motions filed under § 362(d)(2).

[122] The proposed plan can only be confirmed if the Debtors are successful in challenging Deutsche's claimed interest in the Property.

**CONCLUSION**

Based on the foregoing,

IT IS HEREBY ORDERED the Motion for Relief from Automatic Stay (Docket No. 64) filed by Deutsche is GRANTED.  Deutsche may pursue any state law rights it may have with respect to the Property.

Dated December 4, 2012                            BY THE COURT:

Michael E. Romero
United States Bankruptcy Judge