FILED
~~~ ~~~ GARDNER

~~~ JUL 16   AM 11: 14

U.S. BANKRUPTCY COURT
DISTRICT OF COLORADO

Mark S. Miller & Jamileh Miller
19733 E Union Dr.
Centennial, CO 80015
Phone No: 303-358-1190

**10-25453-MER**

FULL NAME, ADDRESS. (INCLUDING ZIP CODE) & PHONE NUMBER

# UNITED STATES BANKRUPTCY COURT
## STATE OF COLORADO

**Mark S. Miller & Jamileh Miller**

ADVERSARY CASE NUMBER

v.                          **PLAINTIFF(S)**

**Deutsche Bank National Trust Company ,**
**ARAPAHOE COUNTY PUBLIC TRUSTEE OFFICE**
**ARONOWITZ & MECKENEBERG**
**SUSAN HENDRICK**
**STACEY ARONOWITZ**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEM**
**ONE WEST BANK, FSB**
**JUSTIN ROCK & BARBARA CAMPBELL**
**DEFENDANT(S)**

# ORIGINAL COMPLAINT
## CIVIL RIGHTS COMPLAINT

PURSUANT TO (Check All That Apply)
☑ 42 U.S.C §1983   ☑ 42 U.S.C §1985   ☐ 42 U.S.C §1986
☐ Bivens v. Six Unknown Agents 403 U. S. 3 8 8 (197 1)
☑ 42 U.S.C §1981   ☐ 42 U.S.C §1981a   ☑ 42 U.S.C §1982
☐
☐ 42 U.S.C. §1988 - *Proceedings In Vindication Of Civil Rights*
Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988

## I. INTRODUCTION: NATURE OF THE CASE

### COMPLAINT FOR DECLARATORY JUDGMENT TO CANCEL A FRAUDULENT, UNENFORCEABLE MORTGAGE, FRAUD, NEGLIGENT MISREPRESENTATION, MALICIOUS PROSECUTION, CIVIL CONSPIRACY, RACKETEERING, & VIOLATION OF FAIR DEBT COLLECTION PRACTICES

**1.** This is a Civil Action brought by      **Mark S. Miller & Jamileh Miller**      pursuant to 42 USC

§1988 for ***FRAUD***, intentional and wreckless violations of Civil Rights, Constitutional rights, privileges

and immunities.  Defendants, and each of them, have willfully engaged in *a conspiracy to defraud*, and

deprive plaintiffs of valuable property, entered into a Civil conspiracy to unlawfully  interfere with and/or

deprive plaintiffs of rights protected under the Constitution of the United States of America.

**2.** The acts alleged herein arose from illegal acts stemming from the following unlawful acts: ***to wit:***

**Multiple Acts of  Fraud, Racketeering, debt harassment, and conspiracy in the manufacturing**

**of a false mortgage, and use of this fraudulent instrument to commit fraud upon courts, an**

**illegal foreclosure, malicious prosecution and stemming from scams of false instruments**

**submitted in a bankruptcy case on 10/5/2013, originating from a fraudulent and unenforceable**

**mortgage which has violated plaintiff's civil rights and invaded the privacy of plaintiffs,**

Mark S. Miller & Jamilieh Miller VS Deutsche Bank National Trust Company ,

## TABLE OF CONTENTS

1  Original Complaint of          ***Mark S. Miller & Jamilieh Miller***                    .......1

2  Nature Of The Case     *COMPLAINT FOR DECLARATORY JUDGMENT TO CANCEL A FRAUDULENT, UNENFORCEABLE*    .........1
3                         *MORTGAGE, FRAUD, NEGLIGENT MISREPRESENTATION, MALICIOUS PROSECUTION, CIVIL*
                          *CONSPIRACY, RACKETEERING, & VIOLATION OF FAIR DEBT COLLECTION PRACTICES*

   Jurisdiction..................................................................................4
4
   **Parties:** *The Plaintiff(s)*        **Mark S. Miller & Jamilieh Miller**           ..................4
5
                           **vs.**
6    **The Defendant(s)**     **Deutsche Bank National Trust Company ,**        .....................4

7  **Defendant(s)**     **ARAPAHOE COUNTY PUBLIC TRUSTEE OFFICE**        ......................5

8  **Defendant(s)**         **ARONOWITZ & MECKENLBERG**              ......................5

9  **Defendant(s)**            **SUSAN HENDRICK**                    ......................5

10 **Defendant(s)**           **STACEY ARONOWITZ**                   ......................5

11 **Defendants(s)**    **MORTGAGE ELECTRONIC REGISTRATION SYSTEM**      ......................6

12 **Defendants(s)**         **ONE WEST BANK, FSB**                  ......................6

13 **Defendants(s)**     **JUSTIN ROCK & BARBARA CAMPBELL**          ......................6

14
   **Factual Allegations** ........................................................8
15 ***PLAINTIFFS' VERIFIED COMPLAINT FOR CIVIL RIGHTS & CONSTITUTIONAL*** ...................8
   *Factual Allegations Against*      **Deutsche Bank National Trust Company ,**     ...............5
16 *Factual Allegations Against*     **ARAPAHOE COUNTY PUBLIC TRUSTEE OFFICE**      ...............5
   *Factual Allegations Against*          **ARONOWITZ & MECKENLBERG**               ...............5
17 *Factual Allegations Against*             **SUSAN HENDRICK**                     ...............5
   *Factual Allegations Against*            **STACEY ARONOWITZ**                    ...............6
18 *Factual Allegations Against*   **MORTGAGE ELECTRONIC REGISTRATION SYSTEM**      ...............6
   *Factual Allegations Against*          **ONE WEST BANK, FSB**                    ...............6
19 *Factual Allegations Against*     **JUSTIN ROCK & BARBARA CAMPBELL**             ...............6
20                              ***CAUSES OF ACTIONS:***
   *CLAIM 1: Complaint for* <u>FRAUD#1</u>     **FRAUDULENT & MORTGAGE DATED APRIL 20, 2006**   .........10
21 *CLAIM 2: Complaint for* <u>FRAUD#2</u>   FRAUDULENT MORTGAGE INSTRUMENT PRESENTED IN U.S. BANKRUPTCY COURT  ...........12
                                               OCTOBER 5, 2012
   *CLAIM 3: Complaint for* <u>FRAUD#3</u>   FRAUDULENT REPRESENTATIONS BY DEUTSCHE BANK, ARONOWITZ & MECKLENBURG, STACY  ..........14
22                                           ARONOWITZ, SUSAN B. HENDRICK, JUSTIN ROCK, BARBARA CAMPBELL

23 **CLAIM 4:**     <u>COUNT 4: COMPLAINT FOR DECLARATORY JUDGMENT TO CANCEL A</u>   ...............16
                    <u>FRAUDULENT MORTGAGE DATED APRIL 20, 2006</u>

24 **CLAIM 5:**    <u>COUNT 5: COMPLAINT FOR BANKRUPTCY FRAUD AND FRAUD UPON</u>   ...............17
25                                      <u>THE COURT</u>

26 **CLAIM 6:**          <u>COUNT 6: COMPLAINT FOR CIVIL CONSPIRACY</u>        ...............18

27 **CLAIM 7:**    <u>COUNT 7: COMPLAINT FOR RACKETEERING AND COLLECTION OF AN</u>   ...............19
28                              <u>UNLAWFUL DEBT</u>

## TABLE OF CONTENTS

*CLAIM 8  Complaint for Violations of the Fair Debt Collection Practices Act*................**20**

*CLAIM 9:  Rackeeter Influence Corrupt Organizations (RICO) (18 USC §1961, et seq)*...............**21**

*CLAIM 10:  Complaint For Civil Conspiracy (Against All Defendants)*.........................**25**

*CLAIM 11  Complaint For Unjust Enrichment*.................................................**26**

*CLAIM 12  Complaint for Aiding and Abetting*...............................................**27**

CLAIM 13   *Complaint for Declaratory Judgment  - 28 U.S.C. §2201 - §2202*................**28**

*Extreme & Outrageous Conduct*.............................................................**29**

*Prayer*....................................................................................**31**

### *Appendix of Exhibits*

| Exhibit # | Description of Exhibit |
|-----------|----------------------|
| A | LEGAL DESCRIPTION |
| 1 | FRAUDULENT  MORTGAGE DATED APRIL 20, 2006 |
| 2 | FRAUDULENT MORTGAGE INSTRUMENT PRESENTED IN U.S. BANKRUPTCY  COURT OCTOBER 5, 2012 |
| 3 | FRAUDULENT REPRESENTATIONS BY DEUTSCHE BANK, ARONOWITZ & MECKLENBURG, STACY ARONOWITZ, SUSAN B. HENDRICK, JUSTIN ROCK, BARBARA CAMPBELL |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |

Mark S. Miller & Jamilieh Miller **vs**          Deutsche Bank National Trust Company ,          **Page 4 of 33**

## II. JURISDICTION

**THE PLAINTIFFS:**

**Mark S. Miller & Jamieh Miller**

3. This complaint alleges that the civil rights of plaintiff(s) _____

(print plaintiffs name)

**Mark S. Miller & Jamieh Miller 19733 E Union Dr.**
**Centennial, CO 80015**

who presently resides at _____

(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at

**U.S. Bankruptcy Court, Colorado State Court, U.S. District Court**

(institution/city where violation occurred)

4.  Jurisdiction of this court over this complaint is premised upon 1981 of the Civil Rights Act of

1866, and  28 U.S.C. §1343(4) which confers original jurisdiction upon this Court in a civil action to

recover damages or to secure equitable or other relief under any Act of Congress providing for the

protection of Civil Rights and 1331, which confers original jurisdiction upon this Court in a civil

action arising under the Constitution of the United States.

5.  Jurisdiction is further based upon **42 USC §1983** (Civil Action for Deprivation of Rights) **42**

**USC §1981** (Equal Rights Under Law), **42 USC §1982** (Property Rights of Citizens) **42 USC §1985**

(Conspiracy to Interfere With Civil Rights), **42 USC §1986** (Action For Neglect to Prevent) and **42**

**USC §1988** (Proceeding In Vindication of Civil Rights).

6. Jurisdiction is further premised upon 18 U.S.C. §1964(a), (b), (c), and (d) (**R**acketeer **I**nfluenced

and **C**orrupt **O**rganizations), and 15 U.S.C.   **§1692–1692(a)** Subchapter V - Debt Collection

Practices, and 28 USC. **§2201 - §2202, the Declaratory Judgment Act.**

7. Federal jurisdiction is also based on 28 U.S.C §1331 (federal question), 28 U.S.C §1337

(commerce). Venue is proper in this District pursuant to 28 U.S.C **§**1391(b) and **§**1391(c),

8. This court has jurisdiction over the state law claims contained in this complaint under the

doctrine of supplemental jurisdiction over all causes of action asserted under state and **common**

**law.**   The amount in controversy exceeds $10,000.00 (ten thousand dollars)

**Supplemental Jurisdiction**

Jurisdiction of this court over this complaints is premised upon Rule 7001 and in particular, under Rule 7001(1) a
proceeding to recover money or property, under Rule 7001(2), and action to obtain an injunction or other
equitable relief, and Rule 7001(7), suit to obtain a declaratory judgment pursuant to Bankruptcy Rule 7001(9)
Jurisdiction of this court over this matter is invoked pursuant to 28 U.S.C §157(b)(2)(k), 28U.S.C. §157(b)(2)(b),
28 U.S.C. §157(b)(2)(1)(B), under 28 U.S.C. §157(b)(2)(o) and the laws of the state of California, and specifically,
this court has jurisdiction under state law causes of action pursuant to Colorado Code Civ. Proc. a. This court has
jurisdiction under the Uniform Deceptive Trade Practices Act -Bus. & Prof. §17500 et seq and Civ. Proc. §§318,
325, 328., INVASION OF PRIVACY & PRIVACY RIGHTS PROTECTED UNDER ARTICLE 1, §1 OF THE
Colorado CONSTITUTION.

CV-66 (7/97)                              CIVIL RIGHTS COMPLAINT                              Page 2 of 39

Mark S. Miller & Jamilieh Miller **vs** Deutsche Bank National Trust Company ,

9. Defendant(s)         **SUSAN HENDRICK**

_(full name of fourth defendant)_       resides or works at

**1199 BANNOCK STREET**
**DENVER, CO. 80204**

_(full address of fourth defendant)_

_(defendant's position and title, if any)_

The defendant is sued in his/her (Check one or both): ☑ individual   ☑ official capacity.
Explain how this defendant was acting under color of law:
Defendant Susan Hendrick is an officers of the court acting under color of law and participated

which they claim was being done under color of law.

10. Defendant        **STACEY ARONOWITZ**

_(full name of fifth defendant)_       resides or works at

**1199 BANNOCK STREET**
**DENVER, CO. 80204**

_(full address of fifth defendant)_

_(defendant's position and title, if any)_

The defendant is sued in his/her (Check one or both): ☑ individual   ☑ official capacity.
Explain how this defendant was acting under color of law:
Defendant Stacey Aronowitz is an officers of the court acting under color of law and

participated  which they claim was being done under color of law.

11. Defendant   **MORTGAGE ELECTRONIC REGISTRATION SYSTEM**

_(full name of sixth defendant)_       resides or works at

Eric Lee Compere
**MORTGAGE ELECTRONIC REGISTRATION SYSTEM**
1801 Century Park East 16th Floor
Los Angeles, CA 90027

_(full address of sixth defendant)_

_(defendant's position and title, if any)_
The defendant is sued in his/her (Check one or both): ☑ individual   ☐ official capacity.
Explain how this defendant was acting under color of law:
Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEM and its attorneys are

officers of the court acting under color of law, via its mortgage tracking system and participated

in a conspiracy to deprive plaintiffs of civil rights protected under U.S. law.

CIVIL RIGHTS COMPLAINT

Wells Fargo Bank, N.A., Wells Fargo & Company, Schiller & Adam, P.A.,
James J. Pasley, Divine N. Dibenges, Rebecca Schiller, Sarah J. B. Adam,
Jeffrey D. Klobucar, Second Motion to Dismiss **VS Mark S. Miller & Jamilieh Miller**

12 Defendant(s) _____ **ONE WEST BANK, FSB**
(full name of seventh defendant)                                    resides or works at

**7700 WEST PARMER LANE
BUILDING D
AUSTIN, TEXAS 78729-8101**

_____
(full address of seventh defendant)

_____
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☑ individual   ☑ official capacity.

Explain how this defendant was acting under color of law:

Defendant ONE WEST BANK, FSB  and its attorneys are officers of the court acting under

color of law, via its mortgage tracking system and participated  in a conspiracy to deprive

plaintiffs of civil rights protected under U.S, law.

13 Defendant _____ **JUSTIN ROCK & BARBARA CAMPBELL**
(full name of eight defendant)                                    resides or works at

**7700 WEST PARMER LANE
BUILDING D
AUSTIN, TEXAS 78729-8101**

_____
(full address of eight defendant)

_____
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☑ individual   ☑ official capacity.

Explain how this defendant was acting under color of law:

Defendants Justin Rock & Barbara Campbell and their attorneys are officers of the court acting

under color of law, via its mortgage tracking system and participated  in a conspiracy to

deprive plaintiffs of civil rights protected under U.S, law.

## UNITED STATES BANKRUPTCY COURT
## STATE OF COLORADO

| | |
|---|---|
| **Mark S. Miller & Jamilieh Miller** <br><br> Plaintiff <br> v. <br><br> DEUTSCHE BANK NATIONAL TRUST COMPANY, THE PUBLIC TRUSTEE ,ARONOWITZ & MECKENLBERG,SUSAN HENDRICK,STACEY ARONOWITZ, MORTGAGE ELECTRONIC REGISTRATION SYSTEM, ONE WEST BANK FSB, JUSTIN ROCK, BARBARA CAMPBELL <br> Defendant(s). | CASE NUMBER: <br><br> **10-25453-MER** <br><br> **FACTUAL ALLEGATIONS** <br> TITLE OF PLEADING <br><br> # COMPLAINT FOR CIVIL RIGHTS VIOLATIONS |

### PLAINTIFFS' VERIFIED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, CONSTITUTIONAL VIOLATIONS, RACKETEERING, AND *INVASION OF PRIVACY*

**14.** I (we) allege that my (our) constitutional rights, privileges or immunities have been violated and that the following facts form the basis for my allegations- (if necessary you may attach additional pages)

**15.** This is a civil action brought by the named plaintiff(s) against the named defendants, complaining of Civil & Property Right Violations which resulted in *FRAUD*, *theft of real properties*, *theft by forgery*, theft by *ROBO-SIGNED grant deeds*, *illegal* predatory practices, unlawful foreclosure, wrongful eviction, and for a diabolical scheme to defraud, extort, and to steal real property and money, in connection with the operation of illegal enterprises, stemming from illegal activities prohibited by the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C §1961 et seq).

**16..** By its fraudulent conduct and activities, defendants have Intentionally *invaded plaintiffs privacy* and have *violated plaintiff's Civil & Constitutional Rights*.

**17..** In connection with this action, defendants sought to steal by *fraud and deceit* certain Real properties, the "subject properties" *to wit*:

*LEGAL DESCRIPTION & PROPERTY ADDRESS*

Lot 7, Block 4, Fox Hill Filling No 4, county of Arapahoe, State of Colorado

PROPERTY ADDRESS: _____

## FACTUAL ALLEGATIONS

Page 8 of 33

☑ **42 U.S.C §1983**   ☑ **42 U.S.C §1985**   ☐ **42 U.S.C §1986**

☑ **42 U.S.C §1981**   ☐ **42 U.S.C §1981a**   ☑ **42 U.S.C §1982**

**18..** It is specifically alleged that _____ **STACEY ARONOWITZ** _____ committed the following non-exclusive acts in furtherance of the conspiracy, and violations of civil rights, and constitutional rights:

☑ **Participated in a Civil Conspiracy with Susan Hendrick and the other defendants to present**

☐ **false and fraudulent claims in a bankruptcy proceeding and other proceedings to illegally**

☐ **deprive plaintiff of the subject property which made the basis of this case**

☐ _____

☐ _____

**19.** It is specifically alleged that **MORTGAGE ELECTRONIC REGISTRATION SYSTEM** committed the following non-exclusive acts in furtherance of the conspiracy, and violations of civil rights, and constitutional rights:

☑ **Participated in a Civil Conspiracy with Susan Hendrick and the other defendants to present**

☐ **false and fraudulent claims in a bankruptcy proceeding and other proceedings to illegally**

☐ **deprive plaintiff of the subject property which made the basis of this case**

☐ _____

☐ _____

**20..** It is specifically alleged that _____ **ONE WEST BANK, FSB** _____ committed the following non-exclusive acts in furtherance of the conspiracy, and violations of civil rights, and constitutional rights:

☑ **Participated in a Civil Conspiracy with Susan Hendrick and the other defendants to present**

☐ **false and fraudulent claims in a bankruptcy proceeding and other proceedings to illegally**

☐ **deprive plaintiff of the subject property which made the basis of this case**

☐ _____

☐ _____

**21.** It is specifically alleged that **JUSTIN ROCK & BARBARA CAMPBELL** committed the following non-exclusive acts in furtherance of the conspiracy, and violations of civil rights, and constitutional rights:

☑ **Participated in a Civil Conspiracy with Susan Hendrick and the other defendants to present**

☐ **false and fraudulent claims in a bankruptcy proceeding and other proceedings to illegally**

☐ **deprive plaintiff of the subject property which made the basis of this case**

☐ _____

☐ _____

# CAUSE OF ACTION #1 - FRAUD

**DEUTSCHE BANK NATIONAL TRUST COMPANY, THE PUBLIC TRUSTEE ,ARONOWITZ & MECKENLBERG,SUSAN HENDRICK,STACEY ARONOWITZ, MORTGAGE ELECTRONIC REGISTRATION SYSTEM, ONE WEST BANK FSB, JUSTIN ROCK, BARBARA CAMPBELLAND EACH OF THEM HAS PARTICIPATED IN A SERIES OF FRAUDULENT SCHEMES RESULTING IN MILLIONS OF DOLLARS OF PROPERTY BEING WRONGFULLY STOLEN IN FAVOR OF DEFENDANTS**

**BY CREATING FALSE AFFIDAVITS, FALSE DEEDS, AND MANUFACTURING AND FILING MANY FALSE INSTRUMENTS IN PUBLIC RECORDS, DEFENDANTS, HAVE CREATED A *"FRAUD MACHINE"* AND EACH OF THEM, INDIVIDUALLY AND COLLECTIVELY  HAVE COMMITTED CRIMINAL FORGERY AND FRAUD AGAINST THE SUBJECT PROPERTIES, SETFORTH IN EXHIBIT 1 THUR 12.**

**22.** *T*he preceding paragraphs of this complaint are incorporated herein by reference.  Plaintiff's reallege, as if fully set forth herein, each and every allegation ***against each defendant*** above.

**23.**  It is specifically alleged that defendants ***committed a series of fraudulent and illegal acts*** against the subject property, as described herein, which render any purported title, lien, or claim, made by defendant, null and void, and/or unenforceable under law due to defendants fraudulent conduct. Plaintiff(s) was/were induced into believing that these deceitful acts were in good faith.

**24.** In addition to the deceitful, and deceptive acts complained of herein, defendants, individually committed the **following three (3) frauds** relative to the subject properties of this lawsuit:

| MULTIPLE COUNTS OF *FRAUD*  COMMITTED BY DEFENDANTS |
| --- |

## *FRAUDULENT & MORTGAGE DATED APRIL 20, 2006*

## *FRAUDULENT MORTGAGE INSTRUMENT PRESENTED IN U.S. BANKRUPTCY  COURT OCTOBER 5, 2012*

## *FRAUDULENT REPRESENTATIONS BY DEUTSCHE BANK, ARONOWITZ & MECKLENBURG, STACY ARONOWITZ, SUSAN B. HENDRICK, JUSTIN ROCK, BARBARA CAMPBELL*

**25.** It is specifically alleged that the said three (3) fraud scams complained of herein and set forth in greater detail on the following pages are unlawful and illegal **acts of deceit**, and constitute *Deceptive Trade Practices*, *are intentional misrepresentations* which violate the laws of this state. It is alleged this **fraud** was committed by ALL of the name defendants.

**26.** It is specifically alleged that the fraud described and complained of herein above was ***intentional***, ***willful***, and was ***done with malice*** and criminal intent, with the sole purpose_of stealing and/or robbing plaintiff's real property, and for *causing plaintiff great mental distress*.

I. CLAIMS*     CLAIM 6:     **Complaint for FRAUD & Negligent Misrepresentation**     PLD-C-001 (3)

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Mark S. Miller & Jamilieh Miller VS Deutsche Bank National Trust Company , | 10-25453-MER |

## *CAUSE OF ACTION - FRAUD*

# FRAUDULENT MORTGAGE DATED APRIL 20, 2006

EXHIBIT ___2___                                        **<u>FRAUD CLAIM #1:</u>**

ATTACHMENT TO  ☑Complaint   ☐ Cross-Complaint
(Use a separate cause *of* action form for each cause *of* action.)

**27.**                          Mark S. Miller & Jamilieh Miller

FR- 1. Plaintiff (name):_____

DEUTSCHE BANK NATIONAL TRUST COMPANY, THE PUBLIC TRUSTEE ,ARONOWITZ &
alleges that defendant (name):   MECKENLBERG,SUSAN HENDRICK,STACEY ARONOWITZ, MORTGAGE ELECTRONIC REGISTRATION
SYSTEM, ONE WEST BANK FSB, JUSTIN ROCK, BARBARA CAMPBELL

on or about (date):_____ defrauded plaintiff as follows:

FR-2.   **Intentional or Negligent Misrepresentation**
☑  a. Defendant made representations of material fact   ☐ as stated in Attachment FR-2.a   ☑ as follows:

> 1. Misrepresented that a valid consumer based mortgage, was being offered the
> plaintiffs.

b. These representations were **in fact false**. The truth was  ☐ as stated in Attachment FR-2.b   ☑ as follows:

> The mortgage is based upon a deceptive, predatory loan, and fraudulent MERS
> conveyance which has no real commercial value, which is unenforceable under law.

c. When defendant made the representations,
☑   defendant knew they were false, or
☑   defendant had no reasonable ground for believing the representations were true.

d. Defendant made the representations with the intent to defraud and induce plaintiff to act as described
in item FIR-5. At the time plaintiff acted, plaintiff did not know the representations were false and believed
they were true. Plaintiff acted in justifiable reliance upon the truth of the representations.

FR-3.  ☑  **Concealment**
a. Defendant concealed or suppressed material facts   ☐ as stated in Attachment FR-3.a   ☐ as follows:

b. Defendant concealed or suppressed material facts
☑ defendant was bound to disclose.
☑ by telling plaintiff other facts to mislead plaintiff and prevent plaintiff from discovering the concealed
or suppressed facts.

c. Defendant concealed or suppressed these facts with the intent to defraud and induce plaintiff to act
as described in item IFIR-5. At the time plaintiff acted, plaintiff was unaware of the concealed or suppressed
facts and would not have taken the action if plaintiff had known the facts.

CV-66 (7/97)                      CIVIL RIGHTS COMPLAINT

Form Approved for Optional Use
Judicial Council of California              **CAUSE OF ACTION-Fraud**               Code of Civil Procedure, § 425.12
PLD-C-001 (3) [Rev. January 1, 2007]                                              www.courtinfo.ca.gov

PLD-C-001 (3)

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Mark S. Miller & Jamilieh Miller VS Deutsche Bank National Trust Company , | 10-25453-MER |

EXHIBIT ___2___          **CAUSE OF ACTION-FRAUD**          **FRAUD CLAIM #1:**
(Continued)

## FRAUDULENT MORTGAGE DATED APRIL 20, 2006

**28.**
FR-4.   ☑ **Promise Without Intent to Perform**                                        ☐ as stated
  a. Defendant made a promise about a material matter without any intention of performing it
  in Attachment FR-4.a   ☐   as follows:

  1. Defendant promised to bring a fair mortgage to the negotiation table but instead
  brought a fraud which has caused financial loss to the plaintiff's estate.

  b. Defendant's promise without any intention of performance was made with the intent to defraud and induce
  plaintiff to rely upon it and to act as described in item FR-5. At the time plaintiff acted, plaintiff was unaware of
  defendant's intention not to perform the promise. Plaintiff acted in justifiable reliance upon the promise.

FR-5. In justifiable reliance upon defendant's conduct, plaintiff was induced to act   ☐ as stated in Attachment FR-5
  ☑ as follows:

  Plaintiff relied upon the documentation submitted by the defendants and was told at the
  time the mortgage was a fair representation of a consumer based loan.

FR-6. Because of plaintiff's reliance upon defendant's conduct, plaintiff has been damaged   ☐ as stated in
  Attachment FR- 6   ☑ as follows:
  PLAINTIFF'S financial estate has been damaged as a result of the misrepresentations.

FIR - 7. Other:           ☑ Other as follows:

  A false lien has been placed upon the property.

## I. CLAIMS*     CLAIM 6:   Complaint for FRAUD & Negligent Misrepresentation

PLD-C-001 (3)

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Mark S. Miller & Jamilieh Miller VS Deutsche Bank National Trust Company , | 10-25453-MER |

### CAUSE OF ACTION - FRAUD

### FRAUDULENT MORTGAGE INSTRUMENT PRESENTED IN U.S. BANKRUPTCY COURT OCTOBER 5, 2012

EXHIBIT _____

# FRAUD CLAIM #2:

ATTACHMENT TO ☐ Complaint   ☐ Cross-Complaint
(Use a separate cause of action form for each cause of action.)

**29.**

FR- 1. Plaintiff (name): _____ Mark S. Miller & Jamilieh Miller _____

alleges that defendant (name): DEUTSCHE BANK NATIONAL TRUST COMPANY, THE PUBLIC TRUSTEE ,ARONOWITZ & MECKENLBERG,SUSAN HENDRICK,STACEY ARONOWITZ, MORTGAGE ELECTRONIC REGISTRATION SYSTEM, ONE WEST BANK FSB, JUSTIN ROCK, BARBARA CAMPBELL

on or about (date): _____ defrauded plaintiff as follows:

FR-2. **Intentional or Negligent Misrepresentation**
☑ a. Defendant made representations of material fact    ☐ as stated in Attachment FR-2.a    ☐ as follows:

Defendant Susan Hendrick, in conspiracy with the above named defendant submitted false and fraudulent information related to a false mortgage which was represented as a valid original instrument, but which in fact was a fraud upon the court.

b. These representations were **in fact false**. The truth was ☑ as stated in Attachment FR-2.b    ☐ as follows:

The representations were false because the purported original was nothing more than a forged instrument.

c. When defendant made the representations,
☑ defendant knew they were false, or
☑ defendant had no reasonable ground for believing the representations were true.

d. Defendant made the representations with the intent to defraud and induce plaintiff to act as described in item FIR-5. At the time plaintiff acted, plaintiff did not know the representations were false and believed they were true. Plaintiff acted in justifiable reliance upon the truth of the representations.

FR-3. ☑ **Concealment**
a. Defendant concealed or suppressed material facts    ☑ as stated in Attachment FR-3.a    ☐ as follows:

Defendants concealed the fact that they were presenting false and fraudulent information about the false mortgage.

b. Defendant concealed or suppressed material facts
☑ defendant was bound to disclose.
☑ by telling plaintiff other facts to mislead plaintiff and prevent plaintiff from discovering the concealed or suppressed facts.

c. Defendant concealed or suppressed these facts with the intent to defraud and induce plaintiff to act as described in item IFIR-5. At the time plaintiff acted, plaintiff was unaware of the concealed or suppressed facts and would not have taken the action if plaintiff had known the facts.

CV-66 (7/97)                         CIVIL RIGHTS COMPLAINT
Form Approved for Optional Use                                    Code of Civil Procedure, § 425.12
Judicial Council of California        CAUSE OF ACTION-Fraud         www.courtinfo.ca.gov
PLD-C-001 (3) [Rev. January 1, 2007]

PLD-C-001 (3)

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Mark S. Miller & Jamilieh Miller VS Deutsche Bank National Trust Company , | 10-25453-MER |

EXHIBIT ___2___          **CAUSE OF ACTION-FRAUD**

**FRAUD CLAIM #2:**
(Continued)

---

## FRAUDULENT MORTGAGE INSTRUMENT PRESENTED IN U.S. BANKRUPTCY COURT OCTOBER 5, 2012

---

**30.**
FR-4.  ☑ **Promise Without Intent to Perform**                                    ☐ as stated
    a. Defendant made a promise about a material matter without any intention of performing it
    in Attachment FR-4.a  ☐  as follows:

    Defendants promised to submit original instruments in a court hearing but failed to do so.

    b. Defendant's promise without any intention of performance was made with the intent to defraud and induce
    plaintiff to rely upon it and to act as described in item FR-5. At the time plaintiff acted, plaintiff was unaware of
    defendant's intention not to perform the promise. Plaintiff acted in justifiable reliance upon the promise.

FR-5. In justifiable reliance upon defendant's conduct, plaintiff was induced to act          ☐ as stated in Attachment FR-5
    ☑ as follows:

    Plaintiff relied upon the documentation submitted by the defendants to the court and it
    was relied upon due to the honesty required in court hearings.

FR-6. Because of plaintiff's reliance upon defendant's conduct, plaintiff has been damaged          ☐ as stated in
    Attachment FR- 6    ☑ as follows:

      1. Plaintiff has been damaged by the fraud upon the court, as the fraud resulted in a
    judgment against the estate.

FIR - 7. Other:          ☐ Other as follows:

---

I. CLAIMS*          CLAIM 6:    **Complaint for FRAUD & Negligent Misrepresentation**          PLD-C-001 (3)

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Mark S. Miller & Jamilieh Miller VS Deutsche Bank National Trust Company , | 10-25453-MER |

## *CAUSE OF ACTION - FRAUD*

### FRAUDULENT REPRESENTATIONS BY DEUTSCHE BANK, ARONOWITZ & MECKLENBURG, STACY ARONOWITZ, SUSAN B. HENDRICK, JUSTIN ROCK, BARBARA CAMPBELL

EXHIBIT _____                                    **FRAUD CLAIM #3:**

ATTACHMENT TO  ☐ Complaint  ☐ Cross-Complaint
(Use a separate cause of action form for each cause of action.)

**31.**                                    Mark S. Miller & Jamilieh Miller

FR- 1. Plaintiff (name): _____

alleges that defendant (name): DEUTSCHE BANK NATIONAL TRUST COMPANY, THE PUBLIC TRUSTEE ,ARONOWITZ & MECKENLBERG,SUSAN HENDRICK,STACEY ARONOWITZ, MORTGAGE ELECTRONIC REGISTRATION SYSTEM, ONE WEST BANK FSB, JUSTIN ROCK, BARBARA CAMPBELL

on or about (date): _____ defrauded plaintiff as follows:

FR-2.    **Intentional or Negligent Misrepresentation**
☑ a. Defendant made representations of material fact      ☑ as stated in Attachment FR-2.a      ☐ as follows:

Defendant Susan HendrickDEUTSCHE BANK, ARONOWITZ & MECKLENBURG, STACY ARONOWITZ, SUSAN B. HENDRICK, JUSTIN ROCK, BARBARA CAMPBELL, in conspiracy with the above named defendant submitted false and fraudulent information related to a false mortgage which was represented as a valid original instrument, but which in fact was a fraud upon the court.

b. These representations were **in fact false**. The truth was  ☐ as stated in Attachment FR-2.b  ☑ as follows:

The alleged mortgage submitted by the defendants proved to be nothing more that a copy of fraudulent instrument.

c. When defendant made the representations,
☑    defendant knew they were false, or
☑    defendant had no reasonable ground for believing the representations were true.
d. Defendant made the representations with the intent to defraud and induce plaintiff to act as described in item FIR-5. At the time plaintiff acted, plaintiff did not know the representations were false and believed they were true. Plaintiff acted in justifiable reliance upon the truth of the representations.

FR-3.  ☑  **Concealment**
a. Defendant concealed or suppressed material facts      ☐ as stated in Attachment FR-3.a      ☑ as follows:

Defendants concealed the fact that the were collaborating with intent to defraud.

b. Defendant concealed or suppressed material facts
☑ defendant was bound to disclose.
☑ by telling plaintiff other facts to mislead plaintiff and prevent plaintiff from discovering the concealed or suppressed facts.

c. Defendant concealed or suppressed these facts with the intent to defraud and induce plaintiff to act as described in item IFIR-5. At the time plaintiff acted, plaintiff was unaware of the concealed or suppressed facts and would not have taken the action if plaintiff had known the facts.

CV-66 (7/97)                    CIVIL RIGHTS COMPLAINT

Form Approved for Optional Use
Judicial Council of California          **CAUSE OF ACTION-Fraud**          Code of Civil Procedure, § 425.12
PLD-C-001 (3) [Rev. January 1, 2007]                                    www.courtinfo.ca.gov

PLD-C-001 (3)

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Mark S. Miller & Jamilieh Miller **VS** Deutsche Bank National Trust Company , | 10-25453-MER |

EXHIBIT ____2____          **CAUSE OF ACTION-FRAUD**

## FRAUD CLAIM #3:
(Continued)

### FRAUDULENT REPRESENTATIONS BY DEUTSCHE BANK, ARONOWITZ & MECKLENBURG, STACY ARONOWITZ, SUSAN B. HENDRICK, JUSTIN ROCK, BARBARA CAMPBELL

**32.**
FR-4.    ☐ **Promise Without Intent to Perform**
        a. Defendant made a promise about a material matter without any intention of performing it          ☐ as stated
            in Attachment FR-4.a    ☐ as follows:

        b. Defendant's promise without any intention of performance was made with the intent to defraud and induce
            plaintiff to rely upon it and to act as described in item FR-5. At the time plaintiff acted, plaintiff was unaware of
            defendant's intention not to perform the promise. Plaintiff acted in justifiable reliance upon the promise.

FR-5. In justifiable reliance upon defendant's conduct, plaintiff was induced to act        ☐ as stated in Attachment FR-5
        ☑ as follows:
            Plaintiff relied upon the documentation submitted by the defendants to the court and it
            was relied upon due to the honesty required in court hearings.

FR-6. Because of plaintiff's reliance upon defendant's conduct, plaintiff has been damaged        ☐ as stated in
        Attachment FR- 6    ☑ as follows:

            1. Plaintiff has been damaged by the fraud upon the court, as the fraud resulted in a
            judgment against the estate.

FIR - 7. Other:        ☐ Other as follows:

## CAUSE OF ACTION #4:

### COUNT 4: COMPLAINT FOR DECLARATORY JUDGMENT TO CANCEL A FRAUDULENT MORTGAGE DATED APRIL 20, 2006

### *THE FALSE & FRAUDULENT MORTGAGE HAS NO LEGAL EFFECT AND PLAINTIFFS ARE ENTITLED TO HAVE THE FALSE INSTRUMENTS CANCELLED*

**33.** The previous paragraphs including paragraphs **22, 23, 24, 25, 26, 27, 28, 29, 30, 31, & 32 (FRAUD #1, FRAUD #2, FRAUD #3)** are all incorporated herein by reference, and specifically including pages, pages nine (9) thru page fifteen (15), inclusive, as if fully setforth herein.

**34.** It is specifically each one of the named defendants individually, and in conspiracy committed the acts complained of herein, and/or each defendant individually intentionally, and willfully committed the acts and are liable to the plaintiffs named herein.

## CAUSE OF ACTION #5:

### COUNT 5:  COMPLAINT FOR BANKRUPTCY FRAUD AND FRAUD UPON THE COURT

#### *THE PROSECUTION OF FALSE CLAIMS WITH A FAKE MORTGAGE CONSTITUTES FRAUD UPON A COURT, "MALICIOUS PROSECUTION" AND PLAINTIFFS ARE ENTITLED TO RECOVER EXEMPLARY DAMAGES*

**35.** The previous paragraphs including paragraphs **22, 23, 24, 25, 26, 27, 28, 29, 30,31,& 32 (FRAUD #1, FRAUD #2, FRAUD #3)** are all incorporated herein by reference, and specifically including pages, pages nine (9) thru page fifteen (15), inclusive, as if fully setforth herein.

**36.** It is specifically each one of the named defendants committed the acts complained of herein, and/or each defendant individually intentionally, and willfully committed the acts and are liable to the plaintiffs named herein.

## CAUSE OF ACTION #6:

### COUNT 6: COMPLAINT FOR CIVIL CONSPIRACY

**DEUTSCHE BANK NATIONAL TRUST COMPANY, THE PUBLIC TRUSTEE ,ARONOWITZ & MECKENLBERG,SUSAN HENDRICK,STACEY ARONOWITZ, MORTGAGE ELECTRONIC REGISTRATION SYSTEM, ONE WEST BANK FSB, JUSTIN ROCK, BARBARA CAMPBELL ALL PARTICIPATED IN  A CIVIL CONSPIRACY TO DEPRIVE PLAINTIFF OF THE SUBJECT PROPERTY**

**37.** The previous paragraphs including paragraphs **22, 23, 24, 25, 26, 27, 28, 29, 30,31,& 32 (FRAUD #1, FRAUD #2, FRAUD #3)** are all incorporated herein by reference, and specifically including pages, pages nine (9) thru page fifteen (15), inclusive, as if fully setforth herein.

**38.** It is specifically each one of the named defendants committed the acts complained of herein, and/or each defendant individually intentionally, and willfully committed the acts and are liable to the plaintiffs named herein.

# CAUSE OF ACTION #7

---

## COUNT 7: COMPLAINT FOR RACKETEERING AND COLLECTION OF AN UNLAWFUL DEBT

---

### DEFENDANTS MULTIPLE ACTS OF FRAUD, NEGLIGENT MISREPRESENTATION, INCLUDING BANKRUPTCY FRAUD AND COLLECTION OF AN UNLAWFUL DEBT CONSTITUTES ACTS OF RACKEETERING

**39.** The previous paragraphs including paragraphs **22, 23, 24, 25, 26, 27, 28, 29, 30,31,& 32 (FRAUD #1, FRAUD #2, FRAUD #3)** are all incorporated herein by reference, and specifically including pages, pages nine (9) thru page fifteen (15), inclusive, as if fully setforth herein.

**40.** It is specifically alleged each one of the named defendants committed the acts complained of herein, and/or each defendant individually intentionally, and willfully the committed the acts and are liable to the plaintiffs named herein.

---

**UNITED STATES BANKRUPTCY COURT**
**STATE OF COLORADO**

CASE NUMBER:

**Mark S. Miller & Jamilieh Miller**

Plaintiff

v.

**DEUTSCHE BANK NATIONAL TRUST COMPANY, THE PUBLIC TRUSTEE ,ARONOWITZ & MECKENLBERG,SUSAN HENDRICK,STACEY ARONOWITZ, MORTGAGE ELECTRONIC REGISTRATION SYSTEM, ONE WEST BANK FSB, JUSTIN ROCK, BARBARA CAMPBELL**

Defendant(s).

**10-25453-MER**

TITLE OF PLEADING

## CLAIM VIII: COMPLAINT FOR VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
**15 U.S.C. 1692-1692a, et seq**

**FACTUAL ALLEGATIONS**

## DEFENDANTS' FRAUDULENT AND ABUSIVE ACTS HAVE VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACTS - *AGAINST ALL DEFENDANTS*

**41.** The previous paragraphs are incorporated herein by reference as if fully set forth herein. Defendants fraudulent acts violate the Fair Debt Collections Practices act.

**42.** It is specifically alleged herein that the above named defendants conspired among themselves to violate the *Fair Debt Collections Practices Act*, by engaging in abusive, deceptive, and unfair debt collection practices and unconscionable acts which consisted of harassment, abuse, *sending false and misleading mail to extort*, and fraudulent conduct complained of above, which acts were done intentionally to harass, oppress, or abuse the plaintiff in connection of a debt or an alleged debt claimed by the defendants.

**43.** DEUTSCHE BANK NATIONAL TRUST COMPANY, THE PUBLIC TRUSTEE ,ARONOWITZ & MECKENLBERG,SUSAN HENDRICK,STACEY ARONOWITZ, MORTGAGE ELECTRONIC REGISTRATION SYSTEM, ONE WEST BANK FSB, JUSTIN ROCK, BARBARA CAMPBELL

also mismanaged the plaintiff's purported account established by defendants by improperly "stealing" and/or assist in laundering monies or credits in favor of themselves directly from the plaintiff's account with the improper and illegal use of a computer system by fraudulently inputting unauthorized credits or unauthorized amounts of money and misrepresenting these charges as valid "charges".

**44.** These improper computer entries, or so-called " charges" claim to represent monies owed by the plaintiff, but these are nothing more than "illegal data entry or charges" which was improperly entered into the defendant's computer system or financial record.

# STATE OF COLORADO

| | |
|---|---|
| **Mark S. Miller & Jamilieh Miller** | CASE NUMBER: |
| Plaintiff | **10-25453-MER** |
| v. | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, THE PUBLIC TRUSTEE ,ARONOWITZ & MECKENLBERG,SUSAN HENDRICK,STACEY ARONOWITZ, MORTGAGE ELECTRONIC REGISTRATION SYSTEM, ONE WEST BANK FSB, JUSTIN ROCK, BARBARA CAMPBELL | **TITLE OF PLEADING** |
| | **CLAIM XI - COMPLAINT FOR VIOLATION OF THE RACKETEER INFLUENCED CORRUPT ORGANIZATION ACT** |
| Defendant(s). | **18 U.S.C. 1961, et seq** |

### FACTUAL ALLEGATIONS

**45.** The previous paragraphs are incorporated herein by reference as if fully set forth herein. Defendants fraudulent acts violate the Rackeeter Influenced Corrupt Organization Act.

**46.** Through illegal conduct, fraudulent schemes, illegal enterprises, pattern of racketeering activity and continuous fraudulent behavior, the plaintiffs have been injured in their business or personal property by reason of defendants conduct, and RICO violations, and it is the defendants unlawful and illegal acts which are the proximate causes of plaintiffs losses and injuries., and plaintiffs are entitled to recover treble damages as a result.

**47.** Defendants have engaged in a series of predicate acts and corrupt conduct which has violated the Racketeer Influenced Corrupt Organizations Acts, (RICO) and specifically have violated sections 1962(a), 1962(b), 1962(c), and 1962(d) and the alleged RICO conduct has been the source and proximate causes of losses to plaintiff

**48.** Defendant' s fraudulent scheme complained of herein is fraud upon everyone involved. It is fraud upon **the Court** because these fraudulent documents used in foreclosure and eviction proceedings are falsely constructed so that defendants may fraudulently obtain judgments to be used to take over property and subsequent credit lines where investment income is used, and reused in an illegal enterprise where income is invested over and over again to use again against plaintiffs and other consumers who are mislead by the illegal acts.

## Acquisition and Maintenance of an Interest in and Control of

## an Enterprise Engaged in a Pattern of Racketeering Activity:

### 18 U.S.C. §§ 1961(5), 1962(b)

**49**. Plaintiff now alleges each and every allegation as set forth above, and hereby incorporates the same by reference, as if all were set forth fully herein. Substance prevails over form.

**50**. At various times and places partially enumerated in Plaintiff's documentary material, all Defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a RICO enterprise of individuals who were associated in fact and who did engage in, and whose activities did affect, interstate and foreign commerce, all in violation of 18 U.S.C. § 1961(4), (5), (9), and §1962(b).

**51**. During the ten (10) calendar years preceding March 1, 2006., two or more, or all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. §1962(b).

**52.**  In addition to other predicate acts, defendants and each of them, have committed multiple acts of bank fraud, wire fraud, mail fraud, fraud against the property complained of herein, and other predicate acts which have deprived plaintiffs of property and rights guaranteed by the Constitution of the United States.

### The RICO Enterprise(s):

**53**. Defendants have maintained RICO enterprises having different forms, such as Limited Liability Companies, Corporations, associations, and those enterprises are continuing units that constitutes an entities *separate and apart from the alleged pattern of racketeering*; and further include association-in-fact enterprises, which have continuity in existence, and are more than a corporate entities conducting their regular business.

## The Predicate Acts

**54**. In support of the Racketeering Activity, the defendants, and each of them, individually,

and in a criminal and civil conspiracy, have committed the following predicate acts:

☑ Have engaged in Extortionate credit transactions, - Section 894

☑ Fraud and related activity in connection with identification documents- Section 1028

☑ Mail Fraud - Section 1341 (relating to mail fraud);

☑ Wire Fraud - Section 1343 (relating to wire fraud);

☑ Financial Institution Fraud Section 1344 (relating to financial institution fraud),

☑ Money Laundering - Section 1956 (relating to the laundering of monetary instruments),

☑ Monetary transactions in property derived from specified unlawful activity, Section 1957

☑ Bankruptcy Fraud D) any offense involving fraud connected with a case under title 11

### The Conduct:

**55**. In support of the Racketeering conduct, it is specifically alleged that the defendants, and

each of them, individually, has been involved in criminal conduct, that defendants participate

daily in the affairs of the enterprise, by virtue of being directors, officers, or individuals who

control its day-to-day operations, or by another entity, or by outsiders who takes bribes and

kick backs as part of the ongoing criminal operations.

### Mail Fraud:

**56**. It is specifically alleged herein by plaintiffs, that:

(1) there was a scheme or artifice to defraud as setforth in the attached exhibits,

(2) that one or more or all of the defendants participated in the scheme;

(3) there was specific intent on the part of the defendant to defraud the plaintiffs,

(4) Plaintiffs have been deceived by these fraudulent acts, and,

(5) Defendants have used the United States mails or private or commercial interstate carriers

in furtherance of the scheme or artifice to defraud in violation of  18 U.S.C. §1341

**57**. It is specifically alleged that all of the named defendants independently committed the

acts, committed the acts in conspiracy to specifically deprive plaintiffs of property, and

financial asserts complained of herein.

**58**. Specifically, the documents are bills, false deeds, fraudulent grant deeds, and  improper

court documents, sent via the United States First Class Mail, UPS, or FEDx

**Wire Fraud:**

**59.** The previous paragraphs are incorporated herein be reference as if fully set forth herein.

**60.** Defendants, and each of them, individually, and collectively have violated the federal wire fraud statute, 18 U.S.C. §1343,

**61.** Defendants have deployed Voice Over Internet Protocol (VoIP) and telecommunication transmission "in interstate or foreign commerce." including telephone calls, fax messages, international calls and calls to and from defendants international customer service calling centers which host incoming calls which are routinely switched, and transferred between originating telecom ports in the United States and International ports terminated at defendants international offices, and places of operations, and especially defendants VoIP internet communication servers which route calls from interstate and international locations.

**62. Supporting Facts**: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to commit the wire fraud.

## CLAIM 10: Complaint for Civil Conspiracy

**(Asserted Against All Defendants)**

**63**. The previous paragraphs including paragraphs **22, 23, 24, 25, 26, 27, 28, 29, 30,31,& 32 (FRAUD #1, FRAUD #2, FRAUD #3)** are all incorporated herein by reference, and specifically including pages, pages nine (9) thru page fifteen (15), inclusive, as if fully setforth herein.

**64**. Defendants and each of them, willfully, intentionally, and knowingly agreed and conspired with each other to engage in the alleged wrongful conduct, including Defendants' interference with plaintiff's business relationships and other unfair business practices, as well as Defendants' trespass on, plaintiff's real property, and fraud concerning, and conversion of the property to defendants..

**65.** Defendants did all of the the acts alleged acts complained of herein, pursuant to, and in furtherance of, that agreement and/or furthered the conspiracy by cooperating, encouraging, ratifying, or adopting the acts of the others.

**66**. As a direct and proximate result of the acts in furtherance of the conspiracy, Plaintiffs has suffered injury, damage, loss, and harm, including, but not limited to, loss of profits from rents to current and potential persons seeking to lease or rent the property.

**67**. The wrongful conduct committed pursuant to the conspiracy was a substantial factor in causing this harm.

**68**. Defendants' intentional agreement to commit, and commission of, these wrongful acts was willful, malicious, oppressive, and in conscious disregard of plaintiff's property and civil rights, and plaintiffs are therefore entitled to an award of punitive damages to punish their wrongful conduct and deter future wrongful conduct.

### CLAIM 11: Complaint for Unjust Enrichment

**(Asserted Against All Defendants)**

69. The previous paragraphs including paragraphs **22, 23, 24, 25, 26, 27, 28, 29, 30,31,&** **32 (FRAUD #1, FRAUD #2, FRAUD #3)** are all incorporated herein by reference, and specifically including pages, pages nine (9) thru page fifteen (15), inclusive, as if fully setforth herein.

70. Defendants and each of them, have unjustly received benefits at the expense of plaintiffs through their wrongful conduct, complained of herein, including Defendants' interference with business relationships and other unfair business practices, as well as Defendants' trespass on, and fraud concerning, and *conversion of the property*, which took substantial time and investment money for plaintiffs to develop and maintain.

71. Defendants continue to unjustly retain these benefits at the expense of Plaintiffs.

72. It would be unjust for Defendants to retain any value they obtained as a result of their wrongful conduct and fraud perpetrated against plaintiff's financial estate.

73. Plaintiffs are accordingly entitled to full restitution of all amounts in which Defendants have been unjustly enriched at Plaintiffs expense.

## CLAIM 12:  Aiding & Abetting

**(Asserted Against All Defendants)**

**74**.  The previous paragraphs including paragraphs **22, 23, 24, 25, 26, 27, 28, 29, 30,31,& 32 (FRAUD #1, FRAUD #2, FRAUD #3)** are all incorporated herein by reference, and specifically including pages, pages nine (9) thru page fifteen (15), inclusive, as if fully setforth herein.

**75.** As fully described above, Defendants had full knowledge or should have reasonably known of the true nature of the wrongful conduct of each other Defendant, and aided and abetted such wrongful conduct, including interference with plaintiff's business relationships and other unfair business practices, as well as Defendants' trespass on,plaintiff's Real Property including the fraud concerning, and conversion of the related financial assets, by providing substantial assistance and/or encouraging the others to act.

76. Defendants also aided and abetted the described wrongful conduct of the other Defendants by giving substantial assistance and/or encouragement that, separately considered, was wrongful in and of itself.

77. As a direct and proximate result of the aiding and abetting of these acts, Plaintiffs have suffered injury, damage, loss, and harm, including, but not limited to, loss of profits from rents to individuals and use of the subject property.

The wrongful conduct aided and abetted by the Defendants was a substantial factor in causing this harm.

78. Defendants' aiding and abetting of these wrongful acts including the fraud complained of herein, was willful, malicious, oppressive, and in conscious disregard of Plaintiff's Civil and Property rights, and Plaintiffs are therefore entitled to an award of punitive damages to punish their wrongful conduct and deter future wrongful conduct.

**79.**   The preceding paragraphs are incorporated herein by reference.  Plaintiff's reallege, as if fully set forth herein, each allegation above.   The unlawful acts   complained of herein, including but not limited to, the fraud, negligent misrepresentation the embezzlement, conversion, conspiracy, violation of civil rights, and denial of civil rights, all may all be declared illegal or in violation of state and/or federal law.

**80.**   Plaintiff(s) is/are entitled to a declaratory judgment declaring the rights of the plaintiff and status of the property in dispute.  Plaintiff(s) desires a determination to Adverse Possession, to quiet the title to the subject real estate or property which made the basis of this complaint. The rights of the plaintiff(s) with respect to personal property have been violated. Specifically, the defendants have wrongfully asserted rights, converted, taken dominion of the real property described herein which they are not entitled to control.

**81.**   In due course proceedings this court should enter a declaratory judgment pursuant to the declaratory judgment act 28 U.S.C. 2201-2202 as to all of the following:

**(a)** declaratory judgment declaring that plaintiff is the fee simple owner of all right, title, and interest in and to the described real property; and,

**(b)** a declaratory judgment that defendants do not have any right, title, estate, or interest in or lien   on the described real property or personal property complained of; and,

**(c)** a declaratory judgment declaring that defendants have no right of possession of plaintiff's property; and,

**(d)** a declaratory judgment declaring that defendants has <u>trespassed the legal rights and property *rights*</u> of the plaintiff; and;

**(e)** a declaratory judgment that defendants ***committed the FRAUD*** as complained of herein; and,

**(f)** a declaratory judgment that fraud as complained of in paragraphs 9 thru 15 constitutes deceptive trade practices and violates plaintiff Civil & US & State Constitutional Rights,

## *EXTREME AND OUTRAGEOUS CONDUCT*     Page 29 of 33

**THE FRAUDULENT ACTS OF DEUTSCHE BANK NATIONAL TRUST COMPANY, THE PUBLIC TRUSTEE ,ARONOWITZ & MECKENLBERG,SUSAN HENDRICK,STACEY ARONOWITZ, MORTGAGE ELECTRONIC REGISTRATION SYSTEM, ONE WEST BANK FSB, JUSTIN ROCK, AND BARBARA CAMPBELL COMPLAINED OF HEREIN CONSTITUTE EXTREME AND OUTRAGEOUS ACTS NOT NORMALLY TOLERATED BY A DECENT SOCIETY AND WARRANTS PUNITIVE DAMAGES UNDER LAW**

**82..** *T*he preceding paragraphs are incorporated herein by reference.  Plaintiff's reallege, as if fully set forth herein, each allegation above.   Plaintiff further contends that defendant's fraudulent conduct, the conspiracies, the conversions, the embezzlement, the many misrepresentations perpetrated by defendants as complained of herein, including the matters complained of in the preceding paragraphs of this lawsuit, namely, the violations of civil rights, the *deprivation of civil rights*, the defrauding of property, complained of herein, the unlawful actions taken against the plaintiff, the improper and harassing fraudulent instruments sent to the plaintiff, including the FRAUD complained of herein, exceeds all bounds usually tolerated by a decent society, and moreover was ***done with malice***, and with intent to cause knowledge that it would cause, and in fact has caused, ***severe mental and physical distres***s and ***economic loss to the plaintiff***. Defendant's flagrant, willful disregard for the law, its despicable fraudulent, conduct, is **Extreme & Outrageous**, and should be punished accordingly, with ***punitive*** and/or exemplary damages. ***Defendants were unjustly enriched.***

**83..** Regarding the conspiracy claimed herein, plaintiff asserts that if it is found that one or more or all of the defendants did not actively participate in the said illegal acts and conspiracy, then it is alleged that said defendants had knowledge of the conspiracy, the power to prevent, or aid in the prevention of the conspiracy, and *refused to do so*.

**84..**  That, in the alternative and in the event that this court finds that there was no conspiracy between the defendants named herein to collectively harass or defraud the plaintiff, plaintiff alleges that one, or more, or *all of the defendants* named herein **independently committed the unlawful acts** described herein, which acts resulted in *the loss of valuable property rights*, deprivation and violation of plaintiff's rights, privileges, and immunities guaranteed under  state law, Common laws and laws of this State.

Mark S. Miller & Jamilieh Miller vs Deutsche Bank National Trust Company ,

## COMPUTATION OF DAMAGES

**85.**  As a result of the despicable, treacherous, and fraudulent  acts described herein, the individual   plaintiff(s)   and   the   Class   are   entitled   to   recover   from   each defendant, the **following damages**:

| | | |
|---|---|---|
| 1. **Punitive Damages** ............... _(AGAINST ALL DEFENDANTS INDIVIDUALLY)_ | | **$7,000,000.00** |
| 2. Actual Damages........................................................................... | | **$500,000.00** |
| 3. Damages for **FRAUD**................................................................. | | **$216,236.00** |
| 4. Negligent Misrepresentation………………………………………… | | **$216,236.00** |
| 5. Intentional Infliction of Emotional Distress & Pain............................ | | **$1,000,000.00** |
| 6. Restitution for Conspiracy............................................................ | | **$500,000.00** |
| 7. Compensatory Damages................................................................ | | **$1,000,000.00** |
| 8. Treble Damages.......................................................................... | | **$648,708.00** |
| 9. Embarrassment, Humiliation, & Anxiety.......................................... | | **$500,000.00** |
| 10. Restitution for UNJUST ENRICHMENT............................................ | | **$216,236.00** |
| 11. Restitution for RICO Violations | ..................... | **$1,500,000.00** |
| 12. Resitution for Theft and Trespass | ..................... | **$250,000.00** |
| 13. Restitution for Violations of Fair Debt Collections Practices | ........................... | **$250,000.00** |
| 14. Restitution for Embezzlement | ............................ | **$1,500,000.00** |
| 15. Restitution for Civil Rights Violations | ............................ | **$250,000.00** |
| 16. Restitution for U.S. Constitutional Violations | ............................ | **$250,000.00** |
| 17. Restitution for SLANDER OF TITLE | ............................ | **$1,000,000.00** |
| 18. Restitution for CONVERSION | ............................ | **$1,000,000.00** |
| 19. Restitution for Wrongful FRAUDULENT LIEN | ............................ | **$1,000,000.00** |
| 20. Restitution for DECEPTIVE TRADE PRACTICES | ............................ | **$500,000.00** |
| 21. Restitution for MALICIOUS PROSECUTION | ............................ | **$1,000,000.00** |
| Total Damages.......................................................................... | | **$20,297,416.00** |

**Twenty Million Seven Hundred Seventy Six dollars**

_Action of  Mark S. Miller & Jamilieh Miller_

# PRAYER

**E. REQUEST FOR RELIEF**

86. I (we) believe that I (we) am/are entitled to the following specific relief:

**1.  A declaratory judgment declaring that defendants manfactured a false and fraudulent deed.**

**2.  A Declaratory judgment declaring that the foreclosure was unlawful and illegal.**

**3.  A Declaratory judgment declaring that defendants committed the fraud complained of herein.**

**4.  A judgment in the actual amount of fraud perpetrated in this case.**

**5.  Treble damages for the fraud, conspiracy and other unlawful acts complained of herein.**

**6. A declaratory judgment that the act complained of herein is unlawful in commerce.**

**7. A  judgment setting aside the foreclosure sale.**

**9. A declaratory judgment declaring that the eviction action filed by defendants was illegal and fraudulent in nature.**

**10. A declaratory judgment awarding immediate possession of the subject property to plaintiffs.**

**11. A declaratory judgment that defendants acts constitute extreme and outrageous acts.**

**12. Punitive Damages, and,**

**13.  A monetary judgment in the amount of $20,297,416.00 plus interest from the date of judicial demand.**

I (we) request monetary damages in the amount of ___**$20,297,416.00**___   Twenty Million Seven Hundred Seventy Six dollars

| July 16, 2014 | Mark S. Miller |
|---|---|
| (Date) | (Signature of Plaintiff(s)) |
| July 16, 2014 | Jamilieh Miller |
| (Date) | (Signature of Plaintiff(s)) |

NAME ADDRESS & TELEPHONE NUMBER OF ATTORNEY(S) FOR, OR, PLAINTIFF OR
DEFENDANT IF PLAINTIFF OR DEFENDANT IS PRO PER

Mark S. Miller & Jamilieh Miller
19733 E Union Dr.
Centennial, CO 80015
Phone No: 303-358-1190

ATTORNEYS FOR

# UNITED STATES BANKRUPTCY COURT
# STATE OF COLORADO

Mark S. Miller & Jamilieh Miller

v.                                          Plaintiff(s),

DEUTSCHE BANK NATIONAL TRUST COMPANY, THE PUBLIC
TRUSTEE ,ARONOWITZ & MECKENLBERG,SUSAN
HENDRICK,STACEY ARONOWITZ, MORTGAGE ELECTRONIC
REGISTRATION SYSTEM, ONE WEST BANK FSB, JUSTIN
ROCK, BARBARA CAMPBELL

Defendant(s)

CASE NUMBER

CERTIFICATION AND NOTICE
OF INTERESTED PARTIES
(Local Rule 7.1-1)

TO:      THE COURT AND ALL PARTIES APPEARING OF RECORD:

The undersigned, counsel of record for _____ Mark S. Miller & Jamilieh Miller _____
(or party appearing in pro per), certifies that the following listed party (or parties) may have a direct, pecuniary
interest in the outcome of this case. These representations are made to enable the Court to evaluate possible
disqualification or recusal. (Use additional sheet if necessary.)

PARTY                                          CONNECTION
(List the names of all such parties and identify their connection and interest.)

**PLAINTIFFS:**

**Mark S. Miller & Jamilieh Miller**

**THE PARTIES ARE _PLAINTIFFS_ IN THIS
ACTION WITH A FINANCIAL INTEREST IN
THE OUTCOME OF THE LITIGATION.**

**DEFENDANTS:**
**DEUTSCHE BANK NATIONAL TRUST COMPANY,
THE PUBLIC TRUSTEE ,ARONOWITZ &
MECKENLBERG,SUSAN HENDRICK,STACEY
ARONOWITZ, MORTGAGE ELECTRONIC
REGISTRATION SYSTEM, ONE WEST BANK FSB,
JUSTIN ROCK, BARBARA CAMPBELL**

**THE PARTIES ARE _DEFENDANTS_ IN THIS
ACTION WITH A FINANCIAL INTEREST IN
THE OUTCOME OF THE LITIGATION.**

7-16-14
Date

Sign

Mark S. Miller & Jamilieh Miller
Attorney of record for or party appearing in pro per

Mark S. Miller & Jamilieh Miller  vs  Deutsche Bank National Trust Company ,    *Civil Action Number:  10-25453-MER*

Page  38  of  39

## VERIFICATION

Mark S. Miller & Jamileh Miller

I, (we) _____ am/are a plaintiffs in the above-entitled action.

I have read the foregoing complaint and know the contents thereof. The same is true of my own

knowledge, except as to those matters which are therein alleged on information and belief, and

as to those matters, I believe it to be true.

I (we) declare under penalty of perjury that the foregoing is true and correct and that this

declaration was executed at:

_____                    _____
Mark S. Miller                                              Jamileh Miller

Executed At:                                              Executed At:
19233 E Union Dr.                                   19233 E Union Dr. Centennial Co

DATED: 7-16-14                                        DATED: 7-16-14


_____                    _____

Executed At:                                              Executed At:
_____ _____        _____ _____

DATED: _____                                DATED: _____


_____

Executed At:
_____ _____

DATED: _____

*VERIFICATION*

### *Appendix of Exhibits*

| Exhibit # | Description of Exhibit |
|---|---|
| A | LEGAL DESCRIPTION |
| 1 | FRAUDULENT & MORTGAGE DATED APRIL 20, 2006 |
| 2 | FRAUDULENT MORTGAGE INSTRUMENT PRESENTED IN U.S. BANKRUPTCY COURT OCTOBER 5, 2012 |
| 3 | FRAUDULENT REPRESENTATIONS BY DEUTSCHE BANK, ARONOWITZ & MECKLENBURG, STACY ARONOWITZ, SUSAN B. HENDRICK, JUSTIN ROCK, BARBARA CAMPBELL |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |

*Action Of   Mark S. Miller & Jamilieh Miller*

Mark S. Miller & Jamilieh Miller VS Deutsche Bank National Trust Company ,

## Exhibit "A"

*Property Address:*                    19733 E. Union Dr., Centennial, CO 80015

*LEGAL  DESCRIPTION:*    APN:

Lot 7, Block 4, Fox Hill Filling No 4, county of Arapahoe, State of Colorado

*Complaint of Mark S. Miller & Jamilieh Miller*

# FIXED/ADJUSTABLE RATE NOTE
## INTEREST ONLY FIXED PERIOD

**(1 Year LIBOR Index (As Published In *The Wall Street Journal*)-Rate Caps)**

Loan #   123247031                                                    MIN: 100055401232470312

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

April 20, 2006                    Denver                    Colorado
[Date]                            [City]                    [State]

19733 E Union Dr, Centennial, CO 80015

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  216,236.00                    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is       IndyMac Bank, F.S.B., a federally chartered savings bank

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.625        %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on   June,   2006                    . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on     May 1, 2036               , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at        IndyMac Bank, F.S.B., P.O. Box 78826, Phoenix, AZ 85062-8826
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. $    1,193.80            before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

---

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - 1 YEAR LIBOR INDEX - Single Family
(Fixed and Interest Only Periods are the same)

Initials: _____

Page 1 of 5

Form 5602
6/05

8480832 (0506)

VMP Mortgage Solutions, Inc. (800)521-7291



**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

## 4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of May, 2016     , and the adjustable interest rate I will pay may change on that day every     12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding     two and 750/1000ths     percentage points (     2.750     %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than     11.625 % or less than     2.750     %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than 2.000 percentage points from the rate of interest I have been paying for the preceding 12     months. My interest rate will never be greater than     11.625 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)   Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G)   Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## 5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000        % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter.  I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Loan No:  123247031
8450832 (0506)

Page 3 of 5

Form 5602
6/05

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Mark S Miller                    -Borrower    Jamileh Miller                   -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                     -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                     -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                     -Borrower


*[Sign Original Only]*

Loan No: 123247031

8480832 (0506)                    Page 5 of 5                    Form 5602
                                                                 6/05

## ADDENDUM TO ADJUSTABLE RATE NOTE
### (Prepayment)

Loan #: 123247031

THIS ADDENDUM is made this 20th    day of   April, 2006      , and is incorporated into and intended to form a part of an Adjustable Rate Note dated the same date as this Addendum.

1.    Section 5 of the Adjustable Rate Note is modified to provide that I have the right to make payments of principal at any time before they are due. A Prepayment of all of the unpaid principal is known as a "Full Prepayment."  A Prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

Except as provided below, I may make a Full Prepayment or a Partial Prepayment at any time without paying any Prepayment charge. If within the first   three        ( 3           ) year(s) I make a Partial Prepayment or Partial Prepayment(s) of less than twenty percent (20%) of the original principal amount in any twelve (12) month period, I will not pay a Prepayment penalty. However, if within the first     three ( 3           ) year(s), I make a Full Prepayment, Partial Prepayment or Partial Prepayments of more than twenty percent (20%) of the original principal amount in any 12-month period, I will pay a Prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid in excess of twenty percent (20%) of the original principal amount.

If I make a Partial Prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month. If I make a Partial Prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

2.    All other provisions of the Adjustable Rate Note are unchanged by this Addendum and remain in full force and effect.

Dated: _____

_____(Seal)        _____(Seal)
Mark S Miller                  -Borrower        Jamileh Miller                 -Borrower

_____(Seal)        _____(Seal)
                               -Borrower                                       -Borrower

_____(Seal)        _____(Seal)
                               -Borrower                                       -Borrower

_____(Seal)        _____(Seal)
                               -Borrower                                       -Borrower

IndyMac Bank and Federally Exempted Seller Use Only
Hard Prepayment Addendum (1-3 yrs) - ARM
First Mortgages - Multistate, Arkansas (loans over $150,000)

8480279 (0407)                    VMP Mortgage Solutions, Inc. (800)521-7291

SPD #084
(08/04)

# ADDENDUM TO ADJUSTABLE RATE NOTE

Loan #: 123247031

THIS ADDENDUM is made this      20th      day of      April, 2006      , and is incorporated into and intended to form a part of an Adjustable Rate Note dated the same date as this Addendum.

### 1. Section 4(D) of the Adjustable Rate Note is modified as follows:

The interest rate I am required to pay at the first Change Date will not be greater than   11.625   % or less than   2.750   %. Thereafter, my interest rate will never be increased or decreased on any single change Date by more than   two and NO/1000ths   percentage point(s) (   2.000   %) from the rate of interest I have been paying for the preceding   12   months. My interest rate will never be greater than   11.625   % or less than   2.750   %.

**2. All other provisions of the Adjustable Rate Note are unchanged by this Addendum and remain in full force and effect.**

Dated: _____

_____ (Seal)
Mark S Miller                              -Borrower

_____ (Seal)
Jamileh Miller                            -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

**IndyMac Bank**
ARM Note Addendum - Multistate

8480344 (0602)

VMP Mortgage Solutions, Inc.



I074
(2/06)

*q*

**After recording please return to:**
  IndyMac Bank, F.S.B. c/o Document Management

*[Company Name]*

*[Name of Natural Person]*

  901 E. 104th Street Building B Suite 400/500
*[Street Address]*

  Kansas City, MO 64131
*[City, State  Zip Code]*

————————————— *[Space Above This Line For Recording Data]* —————————————

# DEED OF TRUST

**MIN**  100055401232470312

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated          April 20, 2006
together with all Riders to this document.

**(B)** **"Borrower"** is  Mark S Miller and Jamileh Miller

. Borrower is the trustor under this Security Instrument.

**(C)** **"Lender"** is   IndyMac Bank, F.S.B., a federally chartered savings bank

Lender is a           Federal Savings Bank           organized and existing under the laws of
United States of America         . Lender's address is  155 North Lake Avenue,
Pasadena, CA 91101

**(D)** **"Trustee"** is the Public Trustee of            Arapahoe            County, Colorado.

Loan No: 123247031                                             Initials: _____ _____
Colorado Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3006  01/01
—THE COMPLIANCE SOURCE, INC.—                 **Page 1 of 13**                              14301CO 08/00
www.compliancesource.com                                                      © 2000, The Compliance Source, Inc.

**(E)**     **"MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.

**(F)**     **"Note"** means the promissory note signed by Borrower and dated          April 20, 2006                    .
The Note states that Borrower owes Lender     two hundred sixteen thousand two hundred thirty
  six and NO/100ths                                       Dollars (U.S. $  216,236.00  )
plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later
than          May  1, 2036                  .

**(G)**     **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)**     **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)**     **"Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower *[check box as applicable]*:

    ☒ Adjustable Rate Rider     ☐ Condominium Rider     ☐ Second Home Rider
    ☐ Balloon Rider     ☒ Planned Unit Development Rider     ☐ Biweekly Payment Rider
    ☐ 1-4 Family Rider     ☐ Revocable Trust Rider
    ☐ Other(s) *[specify]*

**(J)**     **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)**     **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)**     **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)**     **"Escrow Items"** means those items that are described in Section 3.

**(N)**     **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)**     **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)**     **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)**    **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)**    **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as a nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower, in consideration of the debt and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the                County                of                Arapahoe                :
        *[Type of Recording Jurisdiction]*                        *[Name of Recording Jurisdiction]*

    See Exhibit "A" attached hereto and made a part hereof.

which currently has the address of                                    19733 E Union Dr
                                                                                    *[Street]*

Centennial                                , Colorado                80015                ("Property Address"):
    *[City]*                                        *[Zip Code]*

        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

        BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants

Loan No: 123247031                                                            Initials: _____

and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record and liens for taxes for the current year not yet due and payable.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.   Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.   Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and

Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.   Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.   Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters.  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim.  The 30-day period will begin when the notice is given.  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property.  Lender may



use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.   Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7.   Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.   Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.   Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

Loan No: 123247031                                                                    Initials: _____  _____  _____  _____

Colorado Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                MERS Modified Form 3006  01/01
—THE COMPLIANCE SOURCE, INC.—                                 Page 8 of 13                               14301CO 08/00
www.compliancesource.com                                                                     © 2000, The Compliance Source, Inc

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security



Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.



Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Lender shall mail a copy of the notice to Borrower as provided in Section 15. Trustee shall record a copy of the notice in the county in which the Property is located. Trustee shall publish a notice of sale for the time and in the manner provided by Applicable Law and shall mail copies of the notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's certificate describing the Property and the time the purchaser will be entitled to Trustee's deed. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request that Trustee release this Security Instrument and shall produce for Trustee, duly cancelled, all notes evidencing debts secured by this Security Instrument. Trustee shall release this Security Instrument without further inquiry or liability. Borrower shall pay any recordation costs and the statutory Trustee's fees.

Loan No: 123247031

Initials: _____

**24. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                                  Mark S Miller                                 -Borrower

                                                  Mailing Address: 16255 Highway 50, Rocky Ford, CO 81067


_____          _____ (Seal)
                                                  Jamileh Miller                               -Borrower

                                                  Mailing Address: 16255 Highway 50, Rocky Ford, CO 81067


                                                  _____ (Seal)
                                                                                               -Borrower

                                                  Mailing Address:


                                                  _____ (Seal)
                                                                                               -Borrower

                                                  Mailing Address:

————————————————————— *[Space Below This Line For Acknowledgment]* —————————————————————

State of _____          §
                                       §
County of _____           §

Before me the undersigned authority, on this day personally appeared       Mark S Miller and Jamileh
Miller

known to me (or proved to me through an identity card or other document)
to be the person(s) whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal on this          day of _____  .          .

(Seal)                                       _____
                                             Notary Public
                                             My Commission Expires:

Loan No: 123247031